Sanford, J.
Under a rigid application of the rule relative to the assignment of errors, (18 Conn., 572,) the counsel for the plaintiff would have been confined within narrower limits than they have assumed in argument.
We will, however, notice briefly the points which they have made.
First, it is claimed, that it appears from the record that a larger sum was due from the railroad company' to Beard, Church & Company, than was paid upon the settlement of the 4th of April, 1854, because the committee has found that the balance due to Beard, Church & Co., on their contract, at the time of such settlement, was $32,032.02, and the petitioner claims that the railroad company had, before that time, conclusively waived and released all claims for a deduction from that sum, on account of any damages su’tained bv reason of the non-performance of the contract by Beard, Church & Co. within the time stipulated. •
*400 We think the record before us discloses no such release oi waiver.
It is said, firstly, that the contract prescribes the manner in which damages for non-performance by the contractors shall be ascertained, and that the railroad company, having [ *490 ] omitted *to take advantage of that provision, shall be holden to have waived their right to insist on damages at all. The provision referred to is in these words :—“ In case the contractors shall not, in the opinion of the engineer for the time being, well and truly, from time to time, comply with and perform all the agreements herein before stated and stipulated on their part, the said engineer, at his discretion, may dismiss them from the work, and that then in that event the foregoing agreement shall be null and void, and any balance for work done on said road, which would have been due to said contractors, shall be forfeited, and become the right and property of said corporation; or said engineer and said committee may make such deductions from the payments to be made to said contractors as aforesaid, as they shall deem reasonable for such breach of agreement.” Now it is obvious that this provision has no reference to a final failure of the contractors to complete the whole work by the time specified in the contract, but refers only to such failures as might occur “ from time to time ” within that period; as for defective work, insufficient materials, &c. For such failures the engineer might, at his discretion, put an end to the contract at once, or, with the aid and concurrence of the committee, might make a reasonable deduction from the monthly payments to which the contractors were entitled during the progress of the work. The contract for the final completion of the road on or before the first of October, 1850, is express and positive in its terms, and equally express and positive is the stipulation on the part of the contractors, to pay all damages sustained by the company if they fail to complete the work within the stipulated period.
But, secondly, it is contended that the agreement of. the 5th of June, 1852, is itself a waiver and release of all claim for damages on account of such non-performance.
We think no such construction or effect can be given to that agreement. It was made more than twenty months after the time fixed for the completion of the work. It does not purport to be a final settlement between the parties, or an acceptance of the entire work contracted for, but, on the contrary, [ *491 ] it is in terms restricted in its Operation to those portions of the work which are therein specified. It expresses the assent of the company to “ accept as complete ” *401 the designated portions, and to release the contractors from their liability (not to finish the residue of the work according to their contract, but) “ to build any portion of the fences on the line of said railroad.” And when it is considered that no allusion is made to any delay of the contractors, nor to any damage to the company in consequence of such delay, and that it could not then be ascertained how much longer time would intervene before the final completion of the then unfinished work, it is impossible to conclude that the agents of the company intended to waive its claim for damages on account of such delay.
We think therefore that the instrument relied on is not, in terms or in legal effect, either a waiver or release of such damages. The sum of $3,805.79, the amount of damages found by the committee, was therefore properly chargeable to the contractors, and to be deducted from the sum which would otherwise have been due to them on their contract with the company ; thus leaving due to said contractors, as found by said committee, $27,786.66 only.
Again, it is contended that the contractors were entitled to compensation beyond that specified in the contract for extra work upon the road. And it is found by the committee that the excavations of rock and earth actually made by the contractors, exceeded the estimates made at the time the contract was entered into, and that certain depot buildings were in fact constructed, by direction of the engineer, at a cost considerably exceeding the sum put down in said estimates on that account, and that neither of these items were by the committee brought into the account, or paid by the company upon the settlement of June 5th, 1854. But an examination of the original contract shows that all the hazards of the undertaking were understandingly and voluntarily assumed by the contractors. That contract the committee finds was made fairly, without fraud, mistake or misapprehension, and we know of no principle of law or equity, as administered in our courts, by which the railroad *company can be compelled to pay for such [ *492 ] excess. And besides, it is expressly found that the actual cost of building the road “ varied, as to many items in said estimate, from the prices named in said estimate, and was in some cases less and in some cases greater,” so that this court has no means of ascertaining whether the contract was, upon the whole, profitable to the contractors or otherwise. The contractors must be content to abide by the contract which they thus understandingly and fairly made.
The remaining question is, whether the payment made by the company upon the settlement of the 4th of April, 1854, was *402 made to persons legally authorized to receive it, So as to' exonerate the railroad company from all further liability.' ' '
We have already seen that the amount actually-paid by the railroad company exceeded its liability under the contract with Beard; Church & Co. by more than §2,200. That payment was made several years before the petition had, as against the railroad company, acquired any rights whatever, by assignment or in any other way. It was made to individuals duly authorized to demand and receive it, by virtue of an assignment from Beard, Church & Co.,-given when no other lien upon the fund existed, and made by the united act of all the members of said firm, for a valuable consideration and which even all' of' the members of ther-firm could not have revoked-without the assent of the assignees. The notice and prohibition from Church-, Meader and Chapman to the railroad company had no reference to such' a payment. In its terms the notice ■ relates Only to payments-upon the authority of John F. Beard alone. This payment to William O. Beard, Wildman and Averill, was made by authority of all the partners, and being the whole amount due from the railroad company, and more, of course exonerated the company from all further liability to Beard, Church & Go.
The decree of the superior court therefore -can not, for the cause assigned in the motion, be adjudged erroneous.-
But we think the petitioner has no equity which entitles him to the interposition of the court, either as against the railroad company, or the other defendants in this suit. William £ *493 ] *0. Beard, Wildman and Averill, had large claims against Beard, Church & Co. Church, Meader and Chapman had gone to distant parts of the country, and John F. Beard was the only remaining member of the firm to whom access could conveniently be had, but the partnership had never been dissolved, and whatever effect a notice- from Church, Meader and Chapman, that they would not assent to any adjustment or settlement of the affairs of the firm, might have had upon the authority of John F. Beard to make such adjustment, (a point in regard to which we give no opinion,) no such notice was given. The power and right of John F. Beard to- make such adjustment and settlement for the benefit of the firm was incontrovertible. The settlement in question is found' to have been made in good-faith, equitable, intended for the best interest of all concerned, and beneficial to said firm of Beard, Church & Company in fact and the whole proceeds of the claim against' the railroad company was duly applied in discharge'of debts due from the firm, and which had been secured upon .those proceeds *403 by assignment or- attachment, long before any right or interest of the petitioner under his assignment had accrued.
We find no error in the judgment complained.of, and it. must be affirmed.
In this opinion, the othep judges concurred.
Judgment,,affirmed.