PETER BEATTIE ET AL., EXECUTORS, *vs.* ARTHUR McMULLEN ET ALS.

Third Judicial District, New Haven, June Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and RORABACK, Js.

In an action to recover for work and materials furnished, the complaint alleged that the plaintiffs had agreed to sell and deliver to the defendants McMullen & Company, who were bridge contractors, all rock-faced granite ashlar which they were required to use in the piers and abutments of a bridge over the Connecticut River which they had contracted to build for the other defendant, The Connecticut River Bridge and Highway District; that as soon as the plaintiffs began to supply the granite, the defendants—while admitting that it complied with the specifications—nevertheless insisted and continued to insist that stone of a larger size and with a finer dressing and finish than that called for by the contract should be provided, although they were informed by the plaintiffs that for such stone an extra price would be charged; and that the stones so required were furnished by the plaintiffs at an increased cost and expense. The contract which the plaintiffs made with McMullen & Company (Exhibit *A*) referred to and incorporated such portions of the contract (Ex-

hibit *B*) made by McMullen & Company with the Bridge and Highway District, as were applicable to the rock-faced granite ashlar; and by reference these contracts were made part of the complaint. The defendants, claiming that it appeared from these exhibits that the work and material in question were only such as the plaintiffs had originally contracted to provide, demurred to the complaint upon that ground. *Held:—*

1. That inasmuch as the action was not brought upon the written agreement between the plaintiffs and McMullen & Company, but to secure compensation for labor and materials furnished which were not embraced therein, it was unnecessary for the plaintiffs to allege that these "extras" were inspected and approved by the chief engineer of the Bridge and Highway District—a requirement of the written agreement.

2. That this court could not undertake to say, as matter of law, upon the complaint and contracts, that none of the items in the plaintiffs' bill of particulars were extras; but would leave that question, which to some extent at least was one of fact, to be determined upon the filing of an answer or further pleading.

3. That the provision in Exhibit *B*, to the effect that McMullen & Company should have no claim against the Bridge and Highway District for extra work, unless such work was ordered in writing by the latter's engineer and unless the claim therefor was presented before the first day of the following month, formed no part of the plaintiffs' contract with McMullen & Company, and therefore was not available as a ground of demurrer to the complaint.

4. That in view of the situation of the parties and their different contract relations, it was apparent that whatever extra work or labor was ordered or demanded by the Bridge and Highway District, was required of McMullen & Company and not of the plaintiffs, and that the latter in furnishing such extra work and material looked for payment to McMullen & Company and not to the District; and therefore the complaint, in so far as it was directed against the Bridge and Highway District, was demurrable, in that it failed to set out any facts from which the law would imply a promise upon the part of the District to pay the plaintiffs.

Argued June 11th—decided July 30th, 1907.

ACTION by a contractor to recover for alleged extra work and material furnished, brought to and tried by the Superior Court in New Haven County, *Shumway, J.*, upon demurrers to the complaint; the court sustained the demurrers and rendered judgment for the defendants, and the plaintiffs appealed. *Error in part.*

*William H. Ely* and *Edmund Zacher*, for the appellants (plaintiffs).

*Henry Stoddard* and *Lewis Sperry*, for the appellees (defendants).

HALL, J.  The plaintiffs are dealers in granite.  The defendants, McMullen, Weand and McDermott, are contractors in bridge building.  The defendant, The Connecticut River Bridge and Highway District, is a public corporation composed of certain towns of this State, organized under a special act of legislature for the purpose of constructing and maintaining a public bridge across the Connecticut River at Hartford, and acting by a board of commissioners.  12 Special Laws, p. 485.

The substituted complaint, as afterward amended, contains these allegations :—

" 3.  On the 7th day of November, 1903, the plaintiffs and the defendants, McMullen, Weand and McDermott, with the full knowledge, consent and acquiescence of the defendant, The Connecticut River Bridge and Highway District, entered into a contract, a copy of which is attached to the original complaint and marked Exhibit *A*, and made a part of this complaint, and a copy of the contract and specifications entered into by the parties of the second part to said contract, Exhibit *A*, with The Connecticut River Bridge and Highway District, to which reference is made in Exhibit *A*, is filed with this complaint, and marked Exhibit *B*, and in so far as said contract and specifications are applicable in regard to the rock-faced granite ashlar referred to in said Exhibit *A* are made a part of this complaint.

" But the interlineations in writing and the writing on the margin of said Exhibit *B* in regard to rock-faced granite ashlar were not in said contract and specifications, Exhibit *B*, at the time said Exhibit *A* was executed, but were added thereto thereafter, as more particularly set forth in this complaint.

" 4. Immediately after the execution of said contract, Exhibit *A*, the plaintiffs commenced to and undertook to perform and fulfill all the promises and undertakings on their part made, as set forth in said contract, Exhibit *A*, and always have been ready and willing to and have fully performed all of the undertakings and promises on their part made, as set forth in said Exhibit *A*, and have always been ready and willing to and have fully performed all of the undertakings and promises in regard to rock-faced granite ashlar made by the defendants, McMullen, Weand and McDermott, with the defendant, The Connecticut River Bridge and Highway District, as set forth in the contract referred to in said Exhibit *A*.

" 5. After the contract, Exhibit *A*, was entered into by the parties thereto, the contract and specifications, Exhibit *B*, were changed by the defendant, The Connecticut River Bridge and Highway District, by and with the consent of McMullen, Weand and McDermott, and without the consent of the plaintiffs, and additional requirements were made in regard to the rock-faced granite ashlar, and there was inserted the following provisions :—

" First. ' Especially to avoid plug holes.'

" Second. In regard to the angles and joints the following provision :

" 1″ at point of nose inc. to 3″ at angle, & turning the corner at 3″ inc. to 5″.

" Said contract, Exhibit *B*, was otherwise changed, without the consent of the plaintiffs, in regard to the rock-faced granite ashlar, and other particulars, as is shown by interlineations and writings on the margin, and was further changed by the demand of both of the defendants requiring a finer class of work, and a larger size of stone, as is more particularly hereafter set forth in this complaint ; and neither of said defendants paid the plaintiffs the money due them at the time when it became due in accordance with the terms of the contract, Exhibit *A*, but withheld the same until long after it was due, and until the plaintiffs had brought suit.

" 6. Immediately after the plaintiffs commenced to fulfill their contract and undertakings, as set forth in Exhibit *A*, said McMullen, Weand and McDermott and said Connecticut River Bridge and Highway District demanded and insisted that said stone should be cut above and beyond the requirements set forth in Exhibit *B*, and above and beyond the agreement and undertaking of the plaintiffs, and demanded and required another and much finer class of cutting, dressing, and trimming, and also required a . larger size of stone than that specified in said Exhibit *B*.

" 7. Thereupon said plaintiffs notified both of said defendants that they were demanding a cutting, dressing, and size of stone which was not required by said specifications, and a finer class of cutting and dressing than was required by said specifications, and notified said defendants that if they demanded such cutting and dressing and such a class of cutting and dressing as they then and there demanded, and stone of the size they then demanded, that an extra price would have to be and would be charged for the same.

" 8. After the notice so given by said plaintiffs, Harry Fuller, the inspector of The Connecticut River Bridge and Highway District, and Edwin D. Graves, the engineer of said corporation, by and with the knowledge and consent of the defendants, McMullen, Weand and McDermott, inspected the stone cut by the plaintiffs in accordance with the specifications set forth in Exhibit *B*, and thereafter both of said defendants, The Connecticut River Bridge and Highway District and said McMullen, Weand and McDermott, still ordered and directed the plaintiffs to cut the stone with a class of cutting and dressing and a fineness of cutting and dressing not required by said specifications, and demanded a larger size of stone than required by Exhibit *B*.

" 9. Thereupon, upon the demand of these defendants, the plaintiffs continued to prepare, cut, and furnish said ashlar far in excess of the fineness of cutting and dressing which was called for by said specifications, and a larger size

Beattie *v.* McMullen.

of stone; and on the —— day of August, 1904, and there-
after, before the first day of the month following, the plain-
tiffs presented and handed to the defendants, McMullen,
Weand and McDermott, a bill for the extra services, and
expense connected with the furnishing of said ashlar, and
notified the defendant, The Connecticut River Bridge and
Highway District, of such claim, and of the presentation of
said bill.

"10. Neither of said defendants nor any of their officers
or agents have ever claimed to the plaintiffs that the speci-
fications referred to in said contract, Exhibit *B*, required
the degree of fineness in the cutting and dressing of the
ashlar that was demanded of the plaintiffs, and which was
furnished by the plaintiffs after the notification given by
the plaintiffs that there would be an extra charge for the
same, but have repeatedly admitted the same; and after
said notification and after the presentation of said bills all
the defendants continued to demand and did demand and
require of the plaintiffs that they furnish an ashlar in
fineness of cutting and dressing far in excess of that re-
quired by the specifications set forth in Exhibit *B*, and far
in excess of that required by the specifications set forth in
Exhibit *B*, even after the changes therein, and also stone
of a larger size than required by said specifications.

"11. The plaintiffs have furnished to said defendants,
McMullen, Weand and McDermott, and the said Connecti-
cut River Bridge and Highway District, all rock-faced
granite ashlar required to be used by them in the con-
struction of the piers and abutments of said bridge below
the belt course at the springing line, and have in accordance
with the orders of said McMullen, Weand and McDermott
and said Connecticut River Bridge and Highway District,
cut and delivered stone of a much finer degree of cutting,
dressing, and trimming, and of a larger size than required
by said specifications.

"12. The stone so cut and furnished to the defendants
cost the plaintiffs for cutting and dressing the same largely
in excess of what said stone would have cost them had they

been required simply to deliver stone dressed and cut as described in said specifications; and said plaintiffs were obliged to and did furnish dressed stone of a larger size than required in the specifications, which stone are specifically mentioned in the plaintiffs' bill of particulars, and for the extra size of stone and the extra cost and expense for cutting and dressing, all of which is more specifically set forth in the plaintiffs' bill of particulars, and the statement made in explanation thereof, now on file, all of which are made a part of this complaint, there is due the plaintiffs the sum of $26,396.14, in addition to which sum the plaintiffs claim thirty per cent. (30%) of the sum for the use of the plaintiffs' plant and fixtures, including the services of their employees connected with the plant in the extra handling of said stone, and for the services of the blacksmiths employed in sharpening and repairing broken tools, which services it is impossible to specify in detail, but the plaintiffs claim that said thirty per cent. is a usual and reasonable sum to be charged for such use of the plaintiffs' plant and fixtures.

"13. The defendants have never paid the plaintiffs any part of the sum due them as claimed in the last paragraph, although demand has been made upon them for the same.

" The plaintiffs claim fifty thousand dollars ($50,000) damages." ·

Exhibit *A*, referred to in the complaint, contains these provisions :—

" EXHIBIT A.

". . . Whereas, the parties of the second part [the defendants McMullen, Weand and McDermott] have heretofore entered into a contract with Connecticut River Bridge & Highway District for the building of a stone bridge across the Connecticut river at Hartford, Connecticut; and

" Whereas, the parties of the first part [the plaintiffs] are desirous of furnishing to the parties of the second part certain rock-faced granite ashlar for use in the construction

of the piers and abutments of said bridge below the underside of the belt course at the springing line thereof; . . .

" First. The parties of the first part hereby agree that they shall and will sell and deliver to the parties of the second part all rock-faced granite ashlar required to be used by the parties of the second part in the construction of the piers and abutments of said bridge below the underside of the belt course at the springing line thereof as is required and specified by the contract and specifications entered into by the parties of the second part with The Connecticut River Bridge & Highway District, and which contract and specifications in so far as they may be applicable are hereby made a part of this agreement, and to which for greater particularity reference is hereby made.

" Second. The parties of the first part hereby agree that the said granite so to be sold and delivered by them to the parties of the second part shall be Leete's island granite, from Leete's island, in the town of Guilford, State of Connecticut, and shall be sound and free from structural defects, free from iron, and shall otherwise comply with the said contract and specifications hereinbefore referred to, and shall be subject to the inspection and approval of the chief engineer of the Board of Commissioners of The Connecticut River Bridge & Highway District, before the parties of the second part shall be required to accept or pay for the same. . . .

" Fourth. . . . That the price to be paid therefor by the parties of the second part to the parties of the first part shall be at the rate of $17.50 per cubic yard.

" Fifth. . . . That the parties of the second part will pay to the parties of the first part for the granite so to be delivered upon the same measurements for which the parties of the second part shall receive payment as allowed by the chief engineer of the Board of Commissioners of The Connecticut Bridge & Highway District.

" Sixth. The parties of the second part hereby agree to pay, and the parties of the first part hereby agree to accept,

for the granite so to be delivered hereunder, payment on or about the fifteenth day of each and every month following the delivery and acceptance of any of said granite in the previous months. . . ."

Exhibit B, referred to in Exhibit A, and in the complaint, contains some fifty pages, as printed in the record, and includes the notice of the defendant, The Connecticut River Bridge and Highway District, to contractors; the proposal of the defendants McMullen, Weand and McDermott to the bridge commissioners; the contract entered into between them; the specifications under that contract, and alleged changes indicated by marginal notes, and the bond for the performance of the contract.

The following are among the provisions of the contract contained in Exhibit B, claimed to be material to the questions raised in this case : —

"Whenever the word 'Contractor' is used in this agreement, the same shall be understood to mean the person or persons, or corporation which has entered into this contract as the party of the second part [McMullen, Weand and McDermott]. . . .

"A. This contract covers the construction of a stone bridge across the Connecticut river, at Hartford, Connecticut, exclusive of the steel draw span, and in accordance with all conditions called for by this contract and specifications, and substantially according to the plans for said bridge enumerated in paragraph D of this contract, which plans are hereby annexed for the purpose of illustration; but said plans shall not be held to limit or extend the obligations of the parties hereto, as set forth in this contract and specifications. This contract includes the furnishing of all equipment, labor, and materials of every kind and nature necessary for carrying out the intent and the letter of this agreement. . . .

"D. . . . And it is further understood and agreed that the engineer shall furnish the contractor from time to time during the progress of the work such additional detailed plans as are necessary to show the details of construction,

and that these additional detailed plans are to be considered as illustrating the requirements set forth in this contract and specifications, and are to be followed by the contractor in carrying out the work under this contract. In all cases figures on drawings are to govern; and in case of doubt or lack of dimensions, the contractor agrees to apply to the engineer to supply such deficiencies. In no case shall drawings be scaled.

"E. It is further understood and agreed by the parties hereto that said engineer shall in all cases determine the amount, quality, and classification of the several kinds of work for which payment is to be made under this contract; and the decision of the engineer upon questions relating to said work and the construction and classification thereof shall be final and conclusive; and it is further agreed that the estimate and decision of the engineer shall be a condition precedent to the right of the contractor to receive any money under this agreement.

"F. It is hereby mutually understood and agreed that the work contemplated by the provisions of this contract and these specifications shall be done according to the best modern engineering practice; and any omission in defining such practice must be regarded the same as if made. . . .

"G. The parties hereto do hereby agree that the engineer shall in all cases determine any variation of sizes, elevations, or dimensions from that shown on the plans, as may be required by the exigencies of construction, changes of grade, or details of superstructure. . . .

"H. It is further agreed by the parties hereto that when in the opinion of the engineer work of a character not provided for by this contract must be done, the same shall be performed by the contractor only upon a written order from the engineer, defining its character and the terms upon which it is to be done. . . .

"L. . . . No part of this work shall be sublet, except to parties skilled in and properly equipped for the same, and satisfactory to the board of commissioners. . . ."

The following are among the specifications claimed to be relevant to the issues in this case, with the marginal notes indicating alleged changes : —

"1. The contractor is to . . . construct all foundations, piers, abutments, arches, walls, masonry, sand filling, paving, sidewalks, and curbing, together with all special work and accessories as required, furnishing all equipment, labor, and materials therefor, . . . all as required by this agreement and these specifications, and further requirements of the engineer thereunder."

" 6. All stone where specified to be granite must be sound and free from structural defects, free from iron, and of a quality and color satisfactory to the engineer. . . ."

"19. . . . The facing shall be first-class, heavy, granite ashlar. The body of the work shall be rock-faced, with not over three-inch projections. The finish of belt courses, nosings, and special stones shall be as marked on the plans, or as required by further detailed drawings to be prepared by the engineer. . . . (Marginal Note : " Changed to 5' May 3, '04.")

" All dressed surfaces of ashlar shall be finished to such a degree of fineness that they shall present true plane surfaces. . . .

(Marginal Note : " Especially to avoid plug holes.")

" The nosing of piers shall be laid out as shown on the detailed course plans, and substantially on lines as shown on the general plans. The horizontal and vertical joints shall be cut as specified for ashlar. The exterior faces shall be rock-faced, with not over one-inch projections. The angles and joints shall be neatly pitched to true lines, without draft lines. No dog-hole will be allowed in the face of any stone above elevation 100.00. . . . All dimensioned stone masonry under this clause shall be measured and paid for by the cubic yard, at the price named for this work in this agreement, Item 7. . . .

(Marginal Note : " June 20, '04. 1″ at point of nose, inc. to 3″ at angle, and turning the corner at 3″ inc. to 5″. Instructed Beattie & Fuller.")

"No dog-holes or other marks will be allowed on the exposed face of any stone."

"X. The board of commissioners agrees to pay to the contractor, and the contractor agrees to receive, the following prices for the various classes of work named, as full compensation for furnishing all materials, for use of tools, forms, machinery, and all implements, and for all labor in moving materials, and executing all the work contemplated by this agreement. . . .

"The contractor hereby agrees that he will not ask, demand, sue for, or recover for any materials furnished or work done under this contract any extra compensation beyond the amounts payable for the several classes of work herein enumerated, which shall be actually performed at the prices therefor herein agreed upon and fixed. He also agrees that the aforesaid prices shall cover all loss or damage arising out of the nature of the work aforesaid, or from the action of the elements, or from any unforeseen obstruction or difficulty which may be encountered in the prosecution of the same, and for all risk of every description connected with the work; also, for all expenses incurred by, or in consequence of, the suspension or discontinuance of said work, as herein specified, and for well and faithfully completing the work in the manner and according to the plans and specifications and the requirements of the engineer under them. . . . Whenever, in the opinion of the engineer, the contractor shall have completely performed this contract in spirit and in letter, the engineer shall so certify in writing to the board of commissioners, and his certificate shall state from actual measurement the whole amount of work done by said contractor, and the value thereof, as herein set forth, and the balance to which the contractor is entitled in full settlement under this contract, the said certificate being evidence of the acceptance of the work by the engineer on behalf of said board of commissioners. . . .

"Y. The contractor further agrees that he shall have no claim for compensation for extra work, unless the same is

ordered in writing by the engineer, and unless the claim for the same when so ordered is presented to the board of commissioners before the first day of the month following that during which each specific order is complied with. . . .

" ZZ. The contractor further agrees that any unfaithful or imperfect work or materials that may be discovered before the final acceptance of the work shall be corrected or replaced immediately on the requirements of the engineer, notwithstanding that it may have been overlooked by the proper inspector, and estimated."

Attached to the complaint is the plaintiffs' bill of particulars of some sixteen pages, containing several hundred items of charges for extra work, and materials furnished, for the east and west abutments, and for eight piers of the bridge. A large number of these charges are for a certain number of lineal feet " draft line " or " draft lines, beds, and joints " or " extra draft line bed and joints at 12c," upon certain designated courses, of certain named abutments and piers. There is a large number of charges for stated numbers of lineal feet " margin line " or " extra margin line at 30cts," upon designated courses of the eight piers. Other charges are for stated numbers of square feet of " bed dressing " or " bottom bed dressing," or " extra bed dressing " or " extra dressing bottom bed of header," on designated courses of abutments and piers " at 14cts "; for certain numbers of square feet of " extra jointing stone," " extra cutting circle ends of abutments," " extra cutting face "; certain numbers of cubic feet " extra size ends of headers." The more specific statement, filed April 12th, 1906, also describes by numbers, courses, abutments and piers, a large number of extra size stone furnished, and points out wherein such stone differ from those required by the contract. These charges amount to something over $25,000, and there is added the further charge of thirty per cent. of that amount for the use of the plaintiffs' plant and fixtures.

To the complaint thus framed the defendants McMullen, Weand and McDermott demurred, upon the grounds, in

substance : (1) that by the terms of Exhibit *A* the materials to be furnished by the plaintiffs were to be subject to the inspection and approval of the chief engineer of the Bridge and Highway District, before they were to be accepted and paid for, and that it appeared that the alleged extra work was required by said chief engineer to be furnished under the contract, Exhibit *A*, and Exhibit *B* as a part of it, in order to obtain such approval ; (2) that it did not appear that the alleged changes made in Exhibit *B* required a finer class of cutting and trimming than was required by Exhibit *A*, but that it did appear that they required less work and a lower class of cutting and dressing ; (3) that it appeared that the chief engineer decided that the alleged extra work was not extra work but was required by Exhibits *A* and *B* ; (4) that it appeared that the plaintiffs had acquiesced in such decision ; (5) that by the terms of Exhibit *B*, made part of Exhibit *A*, it was provided that no claim for extra work or materials should be made unless such work or materials should be ordered in writing by the chief engineer, and unless the claim therefor should be presented to the board of commissioners before the first day of the month following that in which the order was complied with, and that it was not alleged that said extra materials and work were so ordered, nor that the claim therefor was so presented ; (6) that The Connecticut River Bridge and Highway District was a public corporation which could only contract by its board of commissioners, and that it was not alleged that the claimed changes in Exhibit *B* were made by their authority, and that it appeared that the alleged changes in Exhibit *B* and the alleged requirements of the engineer were provided for and contemplated in Exhibit *B*.

The defendant District demurred to the complaint upon the same grounds as McMullen, Weand and McDermott, and upon the additional grounds that it appeared that the District was not a party to the contract, Exhibit *A*, and that it did not appear that it had had any contract relations with the plaintiffs in respect to the subject-matter of the suit.

The trial court, while expressing the opinion that the pleadings in their present form left the real issue somewhat uncertain, and that it might be made clearer by an amendment or an answer, sustained both demurrers upon the ground, as indicated by the memorandum of decision, that the complaint in effect alleged that the first ashlars, offered by the plaintiffs as finished according to specifications, were rejected as not complying with the requirements of the written contract, and that the complaint contained no allegation that any ashlar or stone cut and finished as required by the written contract was inspected and approved by the engineer. Although not expressly so stated in the memorandum filed under § 765 of the General Statutes, this decision is apparently based upon the first and third grounds of McMullen, Weand and McDermott's demurrer, and the third and fifth of the Bridge and Highway District's demurrer. The trial judge says in his memorandum of decision, that if the fact were and had been alleged, that the plaintiffs had furnished stone approved by the chief engineer, as in accordance with their contract, and that thereafter the defendants had required stone to be furnished cut and finished above the requirements of the contract, a different case would be presented.

In our view the allegations of the complaint are sufficient to permit proof of the facts suggested by the trial court. This is not an action upon the written contract between the plaintiffs and McMullen, Weand and McDermott. The plaintiffs are not by this suit seeking to obtain payment for work and materials furnished in accordance with the requirements of the written contract, and which the chief engineer has either approved or refused to approve, nor to recover damages for any claimed breach of that contract, but to secure compensation for labor and materials furnished, which were not embraced in it. There is no allegation that the contract prices have not been paid in full. It was unnecessary for the plaintiffs to expressly aver whether such extra work and materials, alleged to have been ordered after the execution of the written con-

tract, and to have been received and used by the defend-
ants, did or did not pass the inspection of the engineer and
have his approval.

As we read the complaint, it does not allege that the
plaintiffs were required to furnish the work and materials
for which they are now seeking to obtain payment, because
the engineer improperly rejected, as not complying with
the terms of the written contract, work and materials
which in fact met the requirements of the contract. It is
true that the plaintiffs allege in their complaint and "more
specific statement" that the defendants required them to
cut stone, and dress surfaces, beyond the requirements of
the written contract, and refused to accept stone of the
size required by that contract, but it is not only not alleged
that such rejection was upon the ground that the work
and materials failed to meet the requirements of the writ-
ten contract, but it is expressly alleged that neither of the
defendants, nor any of their officers or agents, have ever
claimed that the specifications of Exhibit *B* required the
degree of fineness in the cutting and dressing of ashlar
which was demanded and furnished, but have repeatedly
admitted that they did not. By agreeing that the work
and materials furnished under the contract should be sub-
ject to the inspection of the chief engineer of the board of
commissioners, the plaintiffs did not consent that the engi-
neer, while admitting that work furnished complied with
the contract, could compel them to furnish other and
more costly work at contract prices. The demurrers were
erroneously sustained upon the grounds stated by the trial
court.

None of the other grounds of the demurrer of McMullen,
Weand and McDermott can be sustained. Evidently the
principal dispute between the parties is whether or not the
materials and work in question are extras. The defend-
ants by their demurrers, and particularly by the second and
sixth grounds of McMullen, Weand and McDermott's de-
murrer, ask to have that question decided in their favor as
one of law. The complaint, bill of particulars, contracts

and specifications, with their numerous technical terms, abbreviated items and descriptions by letters and numbers, are not calculated to furnish and do not afford sufficient information to enable a court to fully and intelligently determine as a question of law whether or not any of the work and materials in question are extras, and if any are, to point out which items are and which are not. The question whether the materials and work described in the complaint and bill of particulars are embraced in the written contract is, under the present allegations of the complaint, to some extent at least, one of fact, the proper determination of which requires the filing of an answer or further pleading. Upon the present pleadings we can only say that the allegations of the complaint are sufficient to permit proof that extra work and materials were furnished, and that it does not appear that none of the items of the bill of particulars and more specific statement could be shown to have been extras.

The provisions of Sections H, X and Y, above set forth, of the contract and specifications, Exhibit *B*, between McMullen, Weand and McDermott, and The Bridge and Highway District—that the former shall have no claim against the latter for compensation for extra work, unless ordered in writing by the engineer and unless presented on the first day of the following month—are not parts of the contract, Exhibit *A*, between the plaintiffs and McMullen, Weand and McDermott. Exhibit *A* does not make all of Exhibit *B* a part of it, but only such parts as may be applicable. Exhibit *A* describes the rock-faced granite ashlar which the plaintiffs agreed to furnish, as that required and specified by Exhibit *B*, and provides that it must comply with the requirements of Exhibit *B*. Exhibit *B* was made a part of Exhibit *A* to make the provisions of the latter clearer. Exhibit *A* expressly states that Exhibit *B* is referred to "for greater particularity." Evidently the principal, if not the sole, purpose of so referring to it, was that it contained a particular description of the kind, character and quality of the work and materials to be furnished

Beattie *v.* McMullen.

by the plaintiffs, which were only generally described in Exhibit *A*. But Exhibit *A* contains no provision whatever regarding extra work. The different character of the work to be performed under Exhibit *B*, the fact that Exhibit *B* is a municipal contract requiring the expenditure of public money, and other considerations, may well have furnished reasons for making these provisions in Exhibit *B* regarding extra work which were not reasons for making them in Exhibit *A*, and which render such provisions wholly inapplicable to Exhibit *A*.

The allegation of the complaint that the provisions of Exhibit *B* were changed by the defendant is sufficient to meet the test of a demurrer, without an averment that the changes were made by the authority of the board of commissioners.

The demurrer of The Connecticut River Bridge and Highway District was properly sustained. It clearly appears that the District was not a party to the contract, Exhibit *A*, and the facts alleged fail to show any express or implied promise of the District to pay the plaintiffs for the alleged extra work.

The principal allegations, relied upon by the plaintiffs as raising an implied promise by the District, are that McMullen, Weand and McDermott and the District demanded and required the alleged extra work to be done; and ordered and directed the plaintiffs to cut stone, and to furnish stone beyond the requirements of Exhibit *B* after they were informed of the plaintiffs' claim that such work and materials were extras. Ordinarily when goods are furnished or work performed by one person at the request of another, the law implies a promise upon the part of the latter to pay the former for them. But no such promise upon the part of the District can properly be implied from the demand alleged in the complaint. The allegation that the District demanded and required the extra work to be done must be read in connection with the other facts alleged in this case, and the acts of the three parties, the plaintiffs, McMullen, Weand and McDermott, and The Bridge and

Highway District, in ordering, furnishing and receiving the alleged extra work, must be interpreted in the light of the fact that each of them fully understood the different contract relations created by the two agreements Exhibit *A* and Exhibit *B*. The plaintiffs knew that the District looked to McMullen, Weand and McDermott to furnish the stone in question, and that the District understood that the plaintiffs were to furnish them to McMullen, Weand and McDermott, and to receive their pay from them, and that no one but the original contractors McMullen, Weand and McDermott had any right to look to the District for payment. The bills for the extra work were presented monthly to McMullen, Weand and McDermott, and not to the District, and the District was informed of that fact. From all the facts alleged it is apparent that the plaintiffs understood that any requirement of the District that the stone in question be furnished, was a requirement that McMullen, Weand and McDermott must furnish them; and it is equally apparent that the plaintiffs furnished the extra stone to McMullen, Weand and McDermott as they alleged they did, and that they did not understand they were furnishing them, and did not furnish them, upon the credit of the Bridge and Highway District.

There was no error in sustaining the demurrer of the defendant The Connecticut River Bridge and Highway District.

There was error in sustaining the demurrer of the defendants, McMullen, Weand and McDermott.

The case is remanded with direction to overrule the demurrer of the defendants McMullen, Weand and McDermott, and to proceed with the case according to law.

In this opinion the other judges concurred.