PETER BEATTIE ET AL., EXECUTORS, *vs.* ARTHUR McMULLEN ET ALS.

Third Judicial District, Bridgeport, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The plaintiffs supplied the defendants with dressed granite ashlar for their use in the construction of a bridge which they had contracted to build; and expressly agreed that such granite should be subject to the inspection and approval of the chief engineer of the Bridge District, and that his decision as to the quality and amount of the work should be final and conclusive. *Held:*—

1. That under these circumstances the chief engineer was empowered to decide whether the plaintiffs, in supplying stone of certain size and finish, were doing extra work, as they claimed, or were merely complying with their contract obligations, as insisted by the defendants; and that his determination of that question, made in good faith and in the honest discharge of his official duty, was bind-

Beattie *v.* McMullen.

ing upon the parties, notwithstanding the tr:er might be satisfied from the evidence that the engineer had reached a wrong conclusion.

2. That inasmuch as said engineer had since become mentally incompetent and unable to testify, evidence of his declarations, both oral and written, including entries in his diaries and other memoranda made and preserved by him touching the subject-matter in dispute, were admissible as quasi-records of the tribunal constituted by the parties themselves to decide these questions.

3. That entries in the diaries under dates prior to the date of the plaintiffs' contract with the defendants, and evidence of the engineer's statements made before that time, were inadmissible, the engineer having then no authority to judge between the parties to this action.

4. That evidence that the engineer asked the plaintiffs if they would accept a certain sum to settle the dispute, was in the nature of an offer of compromise, and inadmissible.

5. That the plaintiffs were properly allowed to introduce in evidence stones like those upon which they claimed extra work had been done, and to show by experts that they were dressed finer than the specifications required, and the cost of such extra dressing.

6. That all parts of the original contract between the defendants and the Bridge District, and the specifications attached thereto, which described the kind and quantity of material the plaintiffs afterward undertook to furnish, or the work which they assumed to do, were open to the consideration of the jury in determining whether the work and material in question were extras or not.

7. That if the engineer had ordered extras of the plaintiffs, the defendants would not be responsible therefor without proof that they had either authorized the order or had subsequently ratified it.

8. That the fact that the defendants continued to receive and use the stone with knowledge of the plaintiffs' claim that they were extras, did not constitute a rescission of the written agreement, especially as the defendants controverted that claim and insisted that the plaintiffs should fulfil their contract obligations to the approval of the engineer.

The law regards the entries and memoranda of those who have since become incapable of testifying, as it does the writings of a deceased person.

Requests to charge which involve passing, to any extent, upon controverted questions of fact, may properly be refused.

A request that the jury be instructed to state in their verdict, if rendered for the other party, the particular facts upon which it rests, and what work and materials, if any, are found to be extras, is not a proper request for a special verdict, nor for the submission of interrogatories to be answered by the jury.

An assignment of error must point out definitely those portions of the charge of which the appellant complains. An allegation that the

court erred in refusing to charge as requested in certain numbered requests, and in charging as it did touching their subject-matter, is too general and indefinite.

Argued October 26th—decided December 17th, 1909.

ACTION by a subcontractor to recover for alleged extra work and material, brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiffs for $31,516, and appeal by the defendants. *Error and new trial ordered.*

*Henry Stoddard* and *Lewis Sperry,* with whom was *Harry W. Reynolds,* for the appellants (defendants).

*Edmund Zacher* and *William B. Ely,* for the appellees (plaintiffs).

HALL, J. The plaintiffs are engaged in the business of quarrying, preparing and dressing stone; the defendants are contractors in bridge building. The Connecticut River Bridge and Highway District is a public corporation, created by the legislature of this State for the purpose of constructing and maintaining a public bridge across the Connecticut River at Hartford, and acting by a board of commissioners.

In July, 1903, the Bridge and Highway District, by its board of commissioners, entered into a written contract with the defendants for the construction of a bridge, to be about 1,185 feet in length, with a roadway about 80 feet wide, across the Connecticut River at Hartford. This contract, with its attached specifications, will be referred to as Exhibit *B.* On November 7th, 1903, the defendants contracted with the plaintiffs, in writing, for the furnishing of certain stone, required by Exhibit *B,* for the construction of said bridge. This contract will be referred to as Exhibit *A.* Exhibits *A* and *B* are set forth in full in the record of the former appeal in this case to the June term, 1905,

of this court, from the judgment of the Superior Court sustaining the defendants' demurrer to the complaint, and most of the provisions of these agreements and specifications material to the questions raised by the present appeal are given in our opinion upon that appeal. *Beattie* v. *McMullen*, 80 Conn. 160, 67 Atl. 488. We repeat some of them here. The following are from Exhibit *A:*—

"First. The parties of the first part [the plaintiffs] hereby agree that they shall and will sell and deliver to the parties of the second part [the defendants] all rock-faced granite ashlar required to be used by the parties of the second part in the construction of the piers and abutments of said bridge below the underside of the belt course at the springing line thereof as is required and specified by the contract and specifications [Exhibit *B*] entered into by the parties of the second part with The Connecticut River Bridge & Highway District, and which contract and specifications in so far as they may be applicable are hereby made a part of this agreement, and to which for greater particularity reference is hereby made.

"Second. . . . That the said granite . . . shall be sound and free from structural defects, free from iron, and shall otherwise comply with the said contract and specifications hereinbefore referred to, and shall be subject to the inspection and approval of the chief engineer of the Board of Commissioners of The Connecticut River Bridge & Highway District, before the parties of the second part shall be required to accept or pay for the same."

The following are from Exhibit *B:*—

"E. . . . Said engineer shall in all cases determine the amount, quality, and classification of the several kinds of work for which payment is to be made under this contract; and the decision of the engineer upon questions relating to said work and the construction and classification thereof shall be final and conclusive; and it is further agreed that the estimate and decision of the engineer shall be a con-

dition precedent to the right of the contractor to receive any money under this agreement.

"F. . . . The work contemplated by the provisions of this contract and these specifications shall be done according to the best modern engineering practice; . . . everything connected with this work shall at all times be open to the inspection and investigation of the engineer and such assistants as he may deem proper, for the purpose of seeing that all materials furnished and workmanship performed under this agreement shall correspond with the requirements herein set forth.

"G. The parties hereto do hereby agree that the engineer shall in all cases determine any variation of sizes, elevations, or dimensions from that shown on the plans, as may be required by the exigencies of construction, changes of grade, or details of superstructure. . . .

"H. It is further agreed by the parties hereto that when in the opinion of the engineer work of a character not provided for by this contract must be done, the same shall be performed by the contractor only upon a written order from the engineer, defining its character and the terms upon which it is to be done."

The complaint alleges that the plaintiffs, upon the demand of the defendants, furnished stone, in size and in fineness of cutting and dressing, far in excess of the requirements of the specifications of Exhibit *B*, and which the defendants never claimed were required by said specifications, but which they repeatedly admitted were not, and for which they have never paid the plaintiffs.

We held, in substance, upon the former appeal: first, that upon the averments of the complaint the Connecticut River Bridge and Highway District was not liable in this action, and that its demurrer to the complaint was properly sustained; second, that this was not an action to recover payment for work and materials furnished by the plaintiffs under their written contract, Exhibit *A*, with

McMullen, Weand and McDermott, and which work the engineer had either approved or refused to approve, and that it did not appear that the plaintiffs had not been paid in full for the contract work; but was an action to recover payment for services and materials not embraced in the written contract, Exhibit A, and which it was, therefore, not necessary to allege had been approved by the engineer; third, that the provisions of Exhibit B, that McMullen, Weand and McDermott should have no claim for extra work, unless ordered in writing by the engineer and presented on the first day of the following month, were not parts of the contract, Exhibit A; and fourth, that the allegations of the complaint were sufficient to permit proof that extra work and materials had been furnished.

Upon the trial of the case to the jury, after the decision of the first appeal, there was apparently no question but that the plaintiffs had furnished the work and materials required by the contract, and had been fully paid the contract prices therefor. Apparently the principal issue raised by the amended pleadings was whether the work and materials for which the plaintiffs claimed payment were extra work and materials, not ordered by the engineer and furnished by the plaintiffs as a compliance with the requirements of the written contract, or work and materials furnished and required to be furnished by the engineer in compliance with the terms of said written contract. There was also, among others, the further question of whether, if the work and materials in question were extras, they were ordered by the defendants either personally or by their agent.

Upon said trial the jury rendered a verdict for the plaintiffs for $31,516.99, and the defendants appeal mainly because of the exclusion of certain evidence offered by them; of the refusal of the trial court to charge as requested by them; and of the denial of their motion to set aside the verdict as against the evidence.

The most important of the rulings upon evidence com-

plained of, was the exclusion of certain entries in the diaries of 1903, 1904, and 1905, of Edwin D. Graves, the chief engineer of the Connecticut River Bridge and Highway District, which are described in paragraph 24 of the finding of facts, and the exclusion of certain written memoranda of said engineer, marked in the trial court as Exhibits 29–37. Said entries and memoranda are too voluminous to be fully stated here.

Concerning them, the finding states that it appeared in evidence that during each of these three years said Graves kept in his desk, at his office of chief engineer, which was also the office of the Connecticut River Bridge and Highway District, a diary or memorandum-book, which was left there when he went away, in which, two or three times a week, Graves made entries, certain of which concerned said work which the plaintiffs were doing, and referred to interviews with the plaintiffs in relation to said work; that in addition to the entries in the diaries Graves was accustomed to make dictations concerning various matters, which he called reports, and which, when extended into type, he affixed his initials to, and filed among the papers in his desk, and that these diaries and memoranda were there found, and brought from said office and produced in court.

It was stipulated by counsel that Graves was, and for a long time had been, out of the State and mentally incapable of testifying either in court or by deposition.

The demurrer upon the former appeal admitted the truth of the averments of the complaint which showed the work and materials in question were extras, and therefore admitted that the work and materials were not such as the engineer had required the plaintiffs to perform in order to comply with the provisions of the written contract. By the amended pleadings the defendants now deny that the work and materials were extras, and expressly allege, in paragraph 6 of their answer, that the engineer required the claimed extra work and materials to be furnished by the

plaintiffs in fulfilment of the requirements of the written agreement, Exhibits *A* and *B*. This averment of the answer the plaintiffs in their reply deny.

It became, therefore, an important question upon the trial, whether either the engineer, Graves, or the defendants, had ordered this work as extra work, as the complaint alleges, and as the plaintiffs claim to have proved, or whether it was work which the engineer, in the proper exercise of the powers and in the performance of the duties given to and imposed upon him by the written agreement of both parties, had in good faith required the plaintiffs to perform in the fulfilment of their written contract, and as a condition of his approval of their work.

The statement in the opinion upon the former appeal, that Exhibit *A* contained no provision regarding extra work, is not to be taken as a statement that it contained no provision for a determination of the question of what work and materials were necessary to meet the requirements of the written contract. Such a provision clearly appears in the writings, Exhibits *A* and *B*. By their terms the plaintiffs expressly agreed to perform the work described therein to the approval of the engineer; that his decision as to the amount and quality of the work should be final, and that the defendants should not be required to pay for it until it was so approved. By the language of the written contract the parties themselves made the engineer the final judge to decide—of course acting in good faith and in the exercise of his best judgment—when the plaintiffs had fulfilled the requirements of the written contract with reference to the kind and quality of work and materials to be furnished. If, in the honest performance of this duty, the engineer has in good faith and in the exercise of his best judgment decided that the plaintiffs were required to perform the work and furnish the materials in question, in the proper performance of their written contract, they cannot recover in this suit. Such a decision so rendered by

the engineer, that they were a part of the written contract, would be a conclusive decision that they were not extras. *O'Keefe* v. *St. Francis Church,* 59 Conn. 551, 559, 22 Atl. 325; *Healy* v. *Fallon,* 69 Conn. 228, 234, 37 Atl. 495; *Cannon* v. *Wildman,* 28 Conn. 472, 491; *Haunroth* v. *Peters,* 50 Ill. App. 366; *Korf* v. *Lull,* 70 Ill. 420; *Williams* v. *Chicago, S. F. & C. Ry. Co.,* 112 Mo. 463, 20 S. W. 631.

Evidently recognizing this to be true, the plaintiffs offered evidence, which was properly received, to show that the claimed extra work and materials were so variant in kind and quality from those described in the written contract and specifications, that they were manifestly extras and could not reasonably have been otherwise regarded by the engineer; and further offered evidence to show that the engineer expressly decided that they were not embraced in the written contract, but were extra work and materials. To prove the latter fact, the plaintiffs offered evidence, which was rightly admitted, of the declarations of the engineer, that the work and materials in question were extra work and materials, and that the plaintiffs should be paid for them as such.

It is true that the plaintiffs claimed to have proved that Graves was the agent of the defendants, but the plaintiffs were permitted to prove his declarations, as the chief engineer referred to in Exhibit *A,* in explanation of the provisions of the contract, and of what work these provisions required the plaintiffs to perform. Under these circumstances and upon the issues raised by the pleadings, the defendants were entitled to prove, by proper evidence, both for the purpose of contradicting the evidence so offered by the plaintiffs, and for the purpose of showing, as a defense, that the claimed extra work and materials were not extras but were required by the engineer to be performed and furnished by the written contract, that the engineer did not decide as the plaintiffs claimed, but expressly disallowed the plaintiffs' claim for extras, and decided that this

work must be performed as a compliance with the requirements of the written agreement.

The inquiry, then, is, how are such decisions of the engineer to be proved? The written contract contains no provision regarding the manner in which the engineer shall decide these questions, or how he shall express his approval or disapproval of the work, or how his decisions shall be established. Under the circumstances the oral and written statements of the engineer were the best procurable proof of his decisions. They were all admissible in evidence in so far as they indicated his views and conclusions upon the questions of whether the work and materials under consideration in this action were or were not embraced in the provisions and requirements of the written contract, Exhibit A, or in those provisions and specifications of Exhibit B which are by the terms of Exhibit A made a part of it.

Although the testimony of Graves himself, who made the entries and memoranda, would have been admissible upon this question if it could have been obtained, it was, without the defendants' fault, unavailable. The law regards such entries and memoranda of persons who are incompetent to testify, as it would the writings of a deceased person. The facts in this case show that, in so far as they touch the subject under consideration, the entries and memoranda were made by Graves in the performance of his work as chief engineer; that they were concerning matters respecting which he had a personal knowledge superior to that of most any other person, namely, of his own views and conclusions respecting the question of what work the plaintiffs were required to perform in order to fulfil the requirements of their written contract with the defendants; that he was appointed by both parties as the one who, in case of a dispute between them, was to be the arbiter to decide whether or not materials furnished, or work performed, conformed to the requirements of the written con-

tract; that Graves apparently made and preserved these writings as records of his views and of his and others' acts, and of various events, relating to the construction of the bridge in question. As Mr. Graves is incompetent to testify, the entries and memoranda offered, which relate to the question of whether or not Mr. Graves admitted that the work and materials for which payment is asked in this action were extras, or whether he decided or regarded them to be work and materials required for the fulfilment of the written contract, were admissible as quasi-records of a tribunal constituted by the parties to decide these questions. The cases of *Abel* v. *Fitch*, 20 Conn. 90, *Ashmead* v. *Colby*, 26 id. 287, *Bartholomew* v. *Farwell*, 41 id. 107, *Bridgewater* v. *Roxbury*, 54 id. 213, 6 Atl. 415, *Plumb* v. *Curtis*, 66 Conn. 154, 166, 38 Atl. 998, may be cited as discussing questions of evidence somewhat analogous to that under consideration.

The entries in the diaries under dates prior to the date of the execution of the contract with the plaintiffs, were properly excluded. Most of those subsequent to that date should have been received. Perhaps a few of them might properly have been excluded as having no bearing upon the question of whether this work and material were extras. All of the memoranda, Exhibits 29 to 37 inclusive, should have been received.

We find no error in the rulings of evidence complained of and described in the finding in paragraphs from 15 to 22 inclusive, and in paragraph 29 so far as it refers to conversations after the execution of the contract with the plaintiffs. Generally they are rulings admitting proof of declarations of the engineer made after the execution of the written contract and in relation to the work in question. They require no more specific description.

Evidence of the statements of Beattie and of Boller, as set forth in paragraphs 12, 13 and 14 of the finding, was improperly admitted. These statements were made before

the contract with the plaintiff was executed and before Graves had any authority to judge between the parties to this action, and they could not change the effect of the writing afterward executed.

Evidence that Graves asked Beattie, "Will you accept $6,000 to settle up this matter?" was properly excluded as an offer of compromise, as stated in paragraph 22 of the finding, and should not afterward have been admitted as stated in paragraph 26.

It was proper to permit the plaintiffs to produce, as evidence, stones like those upon which it was claimed extra work had been done, and similarly dressed, and to show by competent witnesses that they were dressed finer than required by the specifications of Exhibit *B*, and to prove the necessary expense incurred by the plaintiffs in performing such extra work.

The grounds of the rulings stated in paragraphs 32 to 35 of the finding are not entirely clear. If the evidence offered was excluded upon the ground that the parts of the specifications of Exhibit *B*, referred to in the inquiries, were not included in those pointed out by Graves before plaintiffs' contract was executed, in describing the work to be done by the plaintiffs under their contract, the rulings were erroneous. Every part of Exhibit *B*, and the specifications attached to it, which can fairly be said to describe the kind and quantity of the material to be furnished by the plaintiffs, or the work to be done by them, as described in Exhibit *A*, was open to the consideration of the jury in determining whether the work and materials here in question were extras.

Of the forty or more reasons of appeal to this court, eighteen are based upon the alleged failure of the trial judge to charge the jury in accordance with the defendants' written requests, thirty-seven in number, and occupying seventeen pages of the printed record. It would be unprofitable to repeat the requests here. We shall make only

such references to them as we think may be helpful in another trial of this case.

There was no error in refusing to charge in the language of the first sixteen written requests. Generally described, these are requests to instruct the jury that the plaintiffs' claim in this suit is inconsistent with certain admitted or proved facts. Such facts consist principally of the existence of certain receipts signed by plaintiffs, and apparently claimed by defendants to be receipts in full for portions of the work and material described in this action; of certain bills for these claimed extras sent by plaintiffs to defendants; of the correspondence between the parties concerning them; and of the conduct of the parties after such correspondence. If these receipts were receipts in full for any part of the work and materials described in this action, they were of course inconsistent with the plaintiffs' present claim for payment for such work, and the jury might properly have been so instructed. But such were not the requests to charge; and we do not understand that it was either admitted or conclusively shown that these receipts embraced work and materials for which the plaintiffs are now asking payment. When we compare these sixteen requests with the evidence before us, they seem to ask the court to pass, to some extent, upon controverted questions of fact rather than upon questions of law.

The seventeenth and eighteenth requests were proper, and were perhaps sufficiently complied with.

Request nineteen was sufficiently complied with by the language used in the charge.

With reference to the subjects of these three requests, as well as of the twentieth and twenty-first, it may be well for us to say that it was proper to instruct the jury, and they were perhaps clearly enough instructed, that by the terms of the written contract Mr. Graves had no authority to order extras from these plaintiffs at the expense of the defendants, and that proof that Graves ordered extras

would not render the defendants liable therefor without proof that he had authority to order extras at their expense, or that they had ratified Graves' act in ordering extras at their expense. We find nothing in the situation or relations of the different parties to each other, which would render it unlawful for these defendants to authorize Graves to order extras at their expense, or for these defendants to direct the plaintiffs to furnish all the work and materials that Graves might order. Whether Graves was given such authority was a question of fact. In so far as the plaintiffs relied upon Graves' order of extra work and materials, they were bound to fairly prove that he had authority to order, at the expense of these defendants, work and materials not embraced in their contract with the plaintiffs; or that, having assumed such authority, Graves' acts in ordering extras were subsequently ratified by the defendants.

The twenty-sixth and twenty-seventh requests, which were, in effect, that if the jury returned a verdict for the plaintiffs they should state the facts upon which it rested, and should state the work and materials which they found to be extras and when they were furnished, were properly refused. They were neither proper requests for a special verdict, nor for the submission of interrogatories to be answered by the jury.

The subjects of other requests, so far as they are important, are sufficiently referred to in other parts of this opinion.

The statement in the appeal, that the court erred in refusing and omitting to charge as requested in certain stated requests, "and in charging as the court did touching the subject-matter" of such requests, is not a proper assignment of error in the charge. It fails to point out with sufficient definiteness the part of the charge of which the appellants complain. *Simmonds* v. *Holmes*, 61 Conn. 1, 9, 23 Atl. 702; *Anderson* v. *Husted*, 79 Conn. 535, 540, 66 Atl. 7. But as there must be a new trial upon the grounds already stated, we deem it best to refer to the following

statement in the charge. After referring to certain letters of the dates of September 8th, 10th, 19th, and 24th, 1904, the court, on page 115 of the appeal record, said: "After this correspondence the defendants appear to have continued to order stone of the plaintiffs, and to receive and to use them in the bridge, and have paid the plaintiffs upon the basis of measurements for stone required by the contract, but without extras as claimed by the plaintiffs. The plaintiffs continued to cut and dress stone and to deliver them to the defendants, and with full knowledge on the part of the defendants that the plaintiffs claimed that extra work had been done on them. The parties appear to have been brought face to face with each other, with the contract between them, upon the basis of their respective claims in relation to [its] interpretation. . . . If you find, in view of the contract as interpreted by the court, that the plaintiffs did sell and deliver stone to the defendants subsequent to September 24th, 1904, which were cut and dressed beyond the requirements of the contract, and which the defendants received and used in the bridge construction, then you should find a promise implied from those facts to pay for the same by the defendants."

This was incorrect. The assumed facts did not constitute a rescission of the written contract, Exhibit *A*. *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation*, 81 Conn. 479, 71 Atl. 577; *O'Keefe* v. *St. Francis Church*, 59 Conn. 551, 22 Atl. 325. The fact that the defendants continued to receive and use the stone with the knowledge of the plaintiffs' claim that they were extras, did not prevent the defendants from insisting upon the right, given them by the terms of the written contract, to have the requirements of that contract fulfilled to the approval of the engineer. At the time referred to by the above language of the charge, the plaintiffs apparently understood the defendants' claim, that the work in question was required to be furnished by the terms of the written contract. If, when there was a dis-

pute between the plaintiffs and defendants upon the question of whether the work so furnished was or was not required in fulfilment of the terms of the written contract, the engineer, in the fair discharge of his duty, decided that it was so required, the plaintiffs could not recover merely because the judgment of the jury differed from that of the engineer. To enable the plaintiffs to recover the value of the work and materials described in the complaint and bill of particulars, they were required under the averments of the complaint to prove that such work and materials in question were in fact extras, that is, work and materials not required by the terms of the written agreement. They were not, however, required to prove that they were approved by the engineer. But even after having presented evidence sufficient to satisfy the jury that such work and materials were not called for by the written contract, they could not recover if it further appeared in evidence that the engineer, in the honest discharge of his duty, had required the plaintiffs to furnish such work and materials as a compliance with the requirements of the terms of the written contract. We think the effect of a bona fide decision by the engineer, that this claimed extra work was a part of that required by the written contract, was also overlooked in the statement made by the court early in the charge, to the effect that the plaintiffs could recover if the jury found that they had in fact furnished "stone of greater sizes, and of different shape, and of finer and more expensive cutting and dressing than required by their contract, which were received and used by the defendants."

As a new trial must be granted for the reasons stated, we do not consider the questions raised upon the denial of the defendants' motion for a new trial upon the ground that the verdict was against the evidence.

There is error and a new trial is ordered.

In this opinion the other judges concurred.