THE NEW ENGLAND MANUFACTURING COMPANY vs. JOHN H. STARIN.

New Haven and Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, Js.

A complaint was made returnable before " the City Court held at New Haven in and for the city of New Haven." The true name of the court was " The City Court of New Haven." There was no other court to which the description could be applied. Held to be so slight a misdescription that it could not be a ground of abatement.

In a suit brought by the plaintiffs against the defendant as a common carrier, for a failure to deliver their goods put into his hands for transportation, an important question was whether the goods were actually delivered to the defendant for transportation, and the testimony of the plaintiffs' agent, that he purchased the goods of a firm in New York, and directed the firm to ship the goods by the defendant, was received by the court, among other things, as going to prove the delivery of the goods to the defendant. Held—1. That the evidence was admissible for the purpose of showing the plaintiffs' interest in the goods, to identify them, and to show that they had authorized the New York firm to ship them by the defendant's line. 2. But that it was not admissible as evidence that they were in fact delivered to the defendant.

If erroneous evidence is considered and weighed in connection with proper evidence, it vitiates the result and produces a mistrial.

[Argued January 21st—decided April 20th, 1891.]

ACTION against the defendant, as a common carrier, for

the failure to deliver goods committed to him for transportation ; brought to the City Court of New Haven and tried to the court before *Pickett, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant for error in the rulings of the court. The case is fully stated in the opinion.

*C. S. Hamilton*, for the appellant.

*H. C. White*, for the appellee.

LOOMIS, J. This is an action against the defendant as a common carrier, upon a contract to transport for hire, from the city of New York to the plaintiff in the city of New Haven, a piece of plush cloth belonging to the plaintiff. The complaint was made returnable before " the City Court held at New Haven, in and for the City of New Haven," on Monday, August 11th, 1890. The defendant appeared by counsel and filed an answer to the merits of the case on the 8th day of September, 1890, and on the 17th day of the same month the plaintiff filed its reply and the pleadings were regularly closed. Afterwards, on the 27th day of September, 1890, the defendant's counsel filed his motion to erase the case from the docket upon the ground that the charter of the city of New Haven, by virtue of which the City Court was created, designates the court as " the City Court of New Haven," and not as in the complaint.

If so slight a misdescription is worthy of any notice at all, the objection should have been taken by plea in abatement. By first pleading to the merits the objection was waived.

The court that tried the case and rendered the judgment upon the issue tendered by the defendant, was " the City Court of New Haven " which confessedly had jurisdiction of the parties and the subject matter. The summons annexed to the complaint required the defendant to appear before " the City Court held at New Haven in and for the City of New Haven," and the defendant in compliance appeared before the City Court of New Haven and filed an

answer to the merits, inscribing the true name of the court on his plea, thereby impliedly admitting that the description in the summons sufficiently identified the court. The defendant was not in fact misled, and as there was but one court to which the description could possibly apply, he could by no possibility have been misled. So that, if there had been a plea in abatement filed, the defect must have been considered a mere circumstantial one, within the saving spirit, if not the letter, of section 1000 of the General Statutes.

The defendant further claims that the facts contained in the finding did not justify the court in rendering judgment for the plaintiff. This position however is so manifestly untenable that we pass it without any discussion, and proceed to the consideration of the only remaining question, which relates to the ruling of the court in admitting the testimony of Wm. H. Post, president of the plaintiff corporation, that he purchased the plush in question for the plaintiff of Cheney Brothers in New York at the time in question, and who also stated the contract made with Cheney Brothers as to the way and manner of shipping the goods. The defendant objected to the evidence, but the court admitted it, on the ground that it would tend to identify the goods in question, and the delivery of the same into the custody and possession of the defendant.

We think the evidence was admissible for some purposes, but whether it was properly received for the purposes mentioned by the court we will presently consider.

It was, we think, clearly admissible as part of the *res gestæ*, to show the plaintiff's interest in the goods, to identify them, and to show that he authorized Cheney Brothers to deliver the goods to the defendant for transportation to the plaintiff.

The legal doctrine applicable to such a case is well stated in 2 Cowen & Hill's Notes to Phillips on Evidence, Part 1, note 444, p. 585, as follows:—" To be a part of the *res gestæ* the declarations must have been made at the time of the act done which they are supposed to characterize, and well calculated to unfold the nature and quality of the facts

they were intended to explain, and so to harmonize with them as obviously to constitute one transaction. (HOSMER, C. J., in *Enos* v. *Tuttle*, 3 Conn., 250,) says: Suppose, for instance, that the goods consigned by *A* to *B* are injured by the defendant whilst they are in the hands of the carrier, in an action for the wrong, brought either by *A* or *B*, according to the circumstances, it would be competent to either of them being plaintiff, to establish his right of property in the goods by proof of such an agreement between them as either left the right of property and action in himself or vested it in him by the delivery to the carrier. This would be, it is true, nothing more than an agreement between *A* and *B*, to which the defendant was not privy; but it would be evidence against him, not as concluding any right of his without his assent, but as affecting the nature of the transaction itself, and showing to whom the injury was done. (1 Stark. Ev., 53.) See remarks of SUTHERLAND, J., in *Murray* v. *Bethune*, 1 Wend., 196. In the example put it might be material to see the letters which had passed between *A* and *B*, and the directions of *A* to his clerks or to the carrier, from which to infer the terms of the agreement and the identity and destination of the goods. In a late case the plaintiff sued out a foreign attachment against *B*, summoning the defendant as garnishee. The summons was served in November, 1828. On the 21st of the previous July the garnishee had thirty barrels of *B's* gin in his hands, which, by letter of that date, he was directed by *B* to hold, with the proceeds of that sold, if any, subject to the order of *G;* and, by letter of the August following, the garnishee had acknowledged that he held the gin and proceeds on account of *G*. These letters were at first excluded as not being evidence for the garnishee, under the notion that they were naked declarations; but on appeal the Supreme Court held them clearly admissible, as evidence of the agreement by which the gin was transferred to *G*. *Cox* v. *Gordon*, 2 Dev., 522."

The objection to the evidence in question, as well as the offer, was only a general one. If the court had received it

in the same manner without applying it to the proof of particular facts, no error could have been predicated upon it, for, where the offer of evidence and the objection to it are general and the court receives it in the same manner, if the evidence is admissible for any purpose it is always presumed to have been received only for the legitimate purpose, in the absence of any finding to the contrary. The difficulty in the present case arises from the fact that the court defined the scope and effect of the evidence by expressly admitting it for two purposes, namely, as tending to identify the goods and to show their delivery into the custody and possession of the defendant.

The testimony actually given by the witness is not related; we are obliged therefore to take it just as the record leaves it. The testimony called for by the offer was what goods the witness purchased of Cheney Brothers at the time in question, and what the contract or agreement was as to the way and manner of shipping the goods. That part of the ruling which received the evidence to identify the goods, as we have already seen, was correct, but it is not easy to justify the ruling in respect to the delivery. Would the contract as to the way and manner of shipment tend to prove that they were actually shipped in that manner? If so, then the mere production of any agreement would tend to show its performance. It would be a credit to human nature if the law could raise a presumption of the performance of all private duty in the same manner that it presumes the performance of official duty, but no such presumption at present exists. In the agreement referred to we may suppose that Cheney Brothers were to deliver the goods purchased by the plaintiff to the defendant for purposes of transportation as directed. They were the plaintiff's agents for that purpose. The very question implies the existence of competent evidence extrinsic of the agreement, and points at once to the agent who was to do the act, and not to the mere command of the principal that it should be done.

But the plaintiff claims that no harm was done the defendant by the ruling of the court even if it was erroneous,

because the defendant admitted in his answer that he received such a case or package as was delivered to him, which the plaintiff says was afterwards proved to contain the goods in question. If the contents of the package had been established by other independent evidence we should be very glad to avoid a new trial, with its consequent expense, far exceeding the value of the goods in question, but the record fails to show the controlling fact relied upon. True, it appears that there was other evidence tending to show the delivery of the goods lost, but such evidence was only considered in connection with the erroneous evidence in question. It is impossible for this court, as indeed it would be for the court below, after the trial is over, to separate the evidence into distinct parts, and to determine that the conviction produced upon the mind of the trier was owing exclusively to one part of the evidence irrespective of the other. If erroneous evidence was considered and weighed in connection with proper evidence, it vitiated the result and produced a mistrial.

There was error in the ruling complained of and a new trial is advised.

In this opinion the other judges concurred.