LESTER H. LATHAM *vs.* ALLEN P. ALDRICH & another.

Norfolk.  March 16, 1896. — May 22, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Deceit — Evidence.*

No exception lies to the admission on cross-examination of evidence which, when admitted, the jury are told in substance to disregard if the facts should turn out to be what afterwards they appear to be.

CONTRACT, with counts in tort for deceit in the sale of land. Trial in the Superior Court, before *Sheldon*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff contended that the defendants, who were the owners of a large tract of land cut up into house lots and streets, had represented to him by printed words upon a prospectus of the land, alleged to have been issued by them, that a house stood on lot No. 56 on the plan; that he, receiving one of the plans, and being induced by the representation, and relying on it, bought lot 56, and, as he supposed, the house; and that the house was on lot 55, an adjoining lot, which latter lot had been conveyed by the defendants to one A. R. Tirrell, subsequently to the conveyance of lot 56 to the plaintiff. The plaintiff produced a deed from the defendants to him of lot 56, which did not contain the words " with buildings thereon," and an insurance policy on a house recited in the policy as being on lot 56, issued to the defendants, and by them assigned to the plaintiff; and testified that he received the deed and policy from Tirrell, and paid Tirrell $700, and had with him a further understanding which the plaintiff was not permitted to state. The plaintiff also testified that, after receiving the deed and policy, he took possession of the house, and expended $900 in repairs thereon; that meantime he received from the defendants a second paper writing, which he produced, giving to him the right to lay a water-pipe across other land of the defendants to supply water to the occupants of the house on lot 56; and that, after the repairs were completed, one Phipps, previously unknown

to the plaintiff, claimed said house by virtue of a deed of lot 55, which he received from Eldora Batcheldor, she from Tirrell, and Tirrell from the defendants, all of these transfers being subsequent to the plaintiff's deed of lot 56. There was no evidence that Phipps knew of the plaintiff repairing his house. It was admitted that the house actually was on lot 55; that the defendants, at the time of the deed of lot 56 to the plaintiff, thought it was on lot 56; that they had so stated in the prospectus; and that the plaintiff always believed it to be on lot 56 until the claim of Phipps. The plaintiff further testified, and his evidence was corroborated by Phipps, that he thereupon purchased lot 55, and the house of Phipps, and thereafter brought this action.

The defendants contended that they had dealt with Tirrell as the agent of one Adams, to whom they had sold through Tirrell nineteen lots of land and two houses, including the house in dispute, receiving as consideration therefor a deed from Adams of certain equities in Boston; that when the trade was completed Tirrell brought to the defendants two deeds already made out, one conveying to one Parsons eighteen lots of land and one house (which lots and house it was agreed had no reference to this case), and the other being the deed to the plaintiff already produced; that the defendants signed both of the deeds, because Tirrell told them that Adams desired the lots, including the house, to be so conveyed to Parsons and the plaintiff; that about three weeks later Tirrell brought them another deed already made out, and stated to them that there was a mistake about the location of the house, which was included in their previous deed to the plaintiff, and that the deed which he then presented would rectify the mistake, saying that it would be all right, and that Adams wished it so done, and explaining to them that the house was actually on lot 55. The defendants testified that they signed the deed without investigation as to the mistake, and probably without reading the deed. It was admitted that this deed was of lot 55 and the buildings thereon, and ran to Tirrell; and that Tirrell's conveyance to Batcheldor was made on the following day, and Batcheldor's conveyance to Phipps a few days later, Phipps having owned the property about three months before his sale to the plaintiff.

The defendants also testified that they never knew or saw the plaintiff until long after all these transactions; that they had made no contract with him, and had had no dealings whatever with him to their knowledge; that the deed of water rights mentioned above was signed by them, probably without reading, and was a mistake, they intending it to refer to lot 55, and not lot 56; that no consideration passed to the defendants from the plaintiff, but the consideration was the transfer from Adams; that upon learning of their mistake as to the location of the house, through Tirrell, they had intended to rectify it by the deed of lot 55 given to him; and that they had supposed that they had so rectified it. There was conflicting evidence as to Tirrell's agency, both parties claiming him to have been the agent of the other, but Tirrell had only represented himself to the defendants, as they testified, as agent of Adams. The evidence was that he had left the vicinity and could not be found.

The defendants asked the plaintiff, on cross-examination, if he was the present owner of lot 55; and the plaintiff replied that he was, and that he bought it from Phipps. He was then asked what he paid for it; to which question the plaintiff objected. The judge then said: "If he got it by himself, by his own skill in making the bargain, or in any way between himself and Phipps, that is his benefit, and is not to go to the defendants. The answer may be that he paid nothing for it, and the circumstances may be such as to show it was really conveyed to him by Tirrell to make up for the mistake by which he had suffered. And then if that were so, the fact of this arrangement, or such arrangement, or any arrangement being made between himself and Tirrell, would be some evidence going to show he had dealt with Tirrell and not with the defendants. The evidence so far is, that the defendants conveyed to Tirrell, then we have it in the possession of Phipps, and now he gets a deed from Phipps. I don't know what the connection will be shown to be between Tirrell and Phipps. It has no bearing at all on the damages, but if it should appear that Tirrell procured Phipps to give this lot, it might affect not only the question of damages, but the question of liability." The evidence was then admitted, and the plaintiff answered that he paid Phipps for lot 55, $1,500 in cash, and an equity valued at $900; and the plaintiff excepted.

It was admitted that the value of the house was about $3,500, and the value of the lot which did not have the house upon it, about $500. There was no evidence offered by the defendants at any time, nor was any contention made by them that either they or Tirrell procured the sale of lot 55 from Phipps to the plaintiff, or had anything to do with it, or knew anything about it until long after the transaction, or that the plaintiff's purchase from Phipps, by which he conceded that he had largely or wholly recouped himself, was anything more than a bargain effected by his own skill. The judge did not afterwards exclude the evidence objected to, nor did he directly refer to it in his charge to the jury, although he carefully instructed them that the rule of damages was the difference between the value of lot 56 without the house, and what it would have been worth at the time of the sale to the plaintiff if the house had been on it.

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*H. T. Richardson*, for the plaintiff.

*W. F. Kimball*, for the defendants, submitted the case on a brief.

HOLMES, J. This is an action for deceit in representing that a house stood on a lot numbered 56 on a plan, whereas the house was on the next lot, 55. On cross-examination the plaintiff admitted that he had bought 55, and was compelled to tell the price he paid, which is the matter excepted to. It is said that his answer shows that by this latter purchase he had nearly or wholly made good his loss, and that the fact was liable to prejudice him with the jury. At the time the question was asked, the relations of all the parties who had anything to do with the lots were disputed and uncertain, and considerable latitude of cross-examination was proper to be allowed. What the answer would be was unknown. The judge stated expressly, that if, as turned out to be the fact, the plaintiff's purchase was a matter entirely between him and the third person who made the deed, his having made a good bargain would not help the defendants. Thus, by the very conditions on which the evidence was admitted, the jury were told to disregard it in the event which happened. We must assume that they followed the instruction. *Sullivan v. Lowell & Dracut Street Railway*, 162 Mass. 536, 538. See *Oak Island Hotel Co.* v. *Oak Island Grove Co.* 165 Mass. 260.

It is unnecessary to inquire how the plaintiff could profit by a new trial in view of the defendants' admitted belief that their representation was true, and the decision in *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, because we are of opinion that the exceptions disclose no ground for a new trial.

*Exceptions overruled.*