WILLIAM E. MAHONEY ET AL. vs. THE HARTFORD INVESTMENT CORPORATION.

First Judicial District, Hartford, May Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

There is no settled rule of legal construction which can be applied to determine whether certain work and materials were included in, or were foreign to, a written contract. The intent of the parties is to be effectuated, if possible, and in the ascertainment of that, the writing should be read in the light of the circumstances at-

tending its execution and the subsequent attitude and conduct of the parties in relation to the subject-matter of the controversy.

In the present case the parties were at issue as to whether the replacing of an old sewer system in a business block which was being made over into a hotel, was within the terms of the plumbing contract, as contended by the defendant, or was extra work, as insisted by the plaintiff. It appeared that at the time the contract was made the location of the drainage pipes had not been determined, that the specifications as to the sewer were indefinite, that the price for the entire plumbing work was but $11,000, while the new system of sewering alone was worth about $5,000; and that when this item was reached the plaintiff refused to do the work unless paid additional compensation, and was told by *G*, the defendant's active manager, to go ahead and that the defendant would pay him for the work. It also appeared that the directors of the defendant were aware of *G's* conduct in regard to the work as it progressed on the building, and of the apparent authority exercised by him, and acquiesced therein. *Held* that under these circumstances the trial court was fully justified in finding that this work was an extra, for the reasonable worth or value of which the plaintiff was entitled to recover.

A corporation may be bound by an implied contract for services in the same manner as an individual. It must be shown, however, not only that the services were valuable, but also that they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for.

An oral direction by the owner to a building contractor to do extra work, is necessarily a waiver of any provision requiring a written order from the architect.

The furnishing of labor and material which is not embraced in the written contract cannot be considered an "alteration" of· the work therein required.

The account books of a building contractor, compiled by his bookkeeper from slips made and turned in by the foreman on the job, who testifies to their correctness and that the labor and materials charged on the books were actually furnished on the building, are admissible in evidence in an action brought by the contractor to recover therefor; and the fact that the book entries were made at intervals after the transactions to which they refer, goes only to the weight, not to the competency, of the evidence. If such slips were original entries, their destruction—after they had been copied into the books—under an honest belief that they were no longer needed, would justify the admission of secondary evidence of their contents.

An error in admitting evidence in support of a claim which is disallowed cannot prejudice the other party.

The admission of evidence on rebuttal instead of in chief is within the discretion of the trial court.

Argued May 6th—decided July 20th, 1909.

ACTION to recover for alleged extra plumbing work and material, brought to and tried by the Superior Court in Hartford County, *Shumway, J.;* facts found and judgment rendered for the plaintiffs, from which the defendant appealed. *No error.*

*William BroSmith* and *Robert C. Dickenson,* for the appellant (defendant).

*Noble E. Pierce* and *Josiah H. Peck,* for the appellees (plaintiffs).

RORABACK, J.  This action was brought on the common counts to recover for extra plumbing work and materials alleged to have been furnished and rendered by the plaintiffs to the defendant, in connection with the reconstruction of a building, now known as the Hotel Garde, .in the city of Hartford.

The appeal is largely based upon an attempt to retry, before this court, questions of fact settled in the court below; the defendant contending that many of the conclusions of the trial court are not warranted by the evidence, which is before us under the provisions of § 797 of the General Statutes, and we are asked to correct the finding so that it will state facts contrary to those found.  An examination of the entire record shows that the finding is justified by the evidence, and fairly states the rulings made during the trial; therefore the case is considered upon the finding as made.

The trial court has found that this building was formerly owned by the estate of James G. Batterson; that the defendant corporation was organized by the heirs of Mr. Batterson and by William H. Garde and his family, for the purpose of transforming the building into a hotel to be

conducted by Mr. Garde, who was an experienced hotel manager; and that on March 29th, 1905, a contract was made between the plaintiffs and the defendant, which, among other things, provided that "the contractor, under the direction and to the satisfaction of Bayley & Goodrich, architects, acting for the purposes of this contract as agents of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the said architects for the plumbing for the alterations and repairs to the Batterson Building, situated at the corner of High and Asylum Streets, Hartford, Conn. . . . No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects, and when so made, the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added to or deducted from the contract price." The specifications upon this subject of sewers state that "the architects have been unable to locate the horizontal runs of soil pipe in the basement further than that the present main 5″ soil pipe appears to come down near the old center stairway and runs out to the sewer at the s. w. corner of the building. The rainwater pipes are supposed to connect to this old soil pipe before it leaves the building. This contractor must locate the old pipes and connect the new soil and rainwater pipes thereto by the most direct runs without interfering with the piers or wall foundations. All old drains, soil and rainwater pipes that may be condemned by the plumbing inspector must be removed and replaced with new pipes. The contractor for plumbing must do all excavation and filling necessary for his work."

The defendant contends that an itemized claim for "sewers," amounting to $4,906.18, and allowed by the trial court as extra work, is included in the contract and specifications. It appears that at the time the parties exe-

cuted the contract the architects were unable to locate and describe the drainage pipes of the building about to be reconstructed. The expressions in the specifications as to the sewer are indefinite. The limit of the plaintiffs' undertaking as to this subject cannot be fixed from the writing in question by any settled rule of legal construction. In the construction and interpretation of written instruments it is a familiar rule that the writing shall, if possible, be so construed as to effectuate the intent of the parties. In arriving at the intent expressed or implied in the language used, it is admissible to consider the situation of the parties and the circumstances connected with the transaction, and the writing should be considered with the help of that evidence. *Wilson* v. *Root*, 80 Conn. 227, 231, 67 Atl. 482; *Sweeney* v. *Landers, Frary & Clark*, 80 Conn. 575, 578, 69 Atl. 566. When the contract was made the sewer work contemplated was an unknown quantity. From the specifications it appears that this item was not regarded as an important feature of the plaintiffs' undertaking. The contract price for the entire plumbing work was but $11,000. The work in replacing a new sewer of modern construction was worth about $5,000. The defendant, several weeks after the contract was made, treated the subject of drainage as a matter foreign to the plaintiffs' undertaking, by directing and paying him for an investigation of the old drainage system of the Batterson Building. This investigation disclosed a large drainage system for the building in question, having numerous lateral connections, some of which came from the buildings in the neighborhood owned by parties other than the defendant. After the old system of drainage had been uncovered, it was condemned by the building inspector of the city of Hartford, and the defendant was ordered. to replace it with a new system of modern construction. Had it been anticipated that this entire drainage system was defective, and that a new one would have to be substituted,

it is fair to presume that the repair of it would have constituted a definite feature of the written agreement. It appears that when the old sewer was condemned, there was then a contention as to which party should perform the work. Mahoney refused to do it unless he received extra compensation. William H. Garde told Mahoney to go ahead and do the work, and the defendant would pay for it. The circumstances surrounding the transaction, and the acts of the parties subsequent to the written agreement, are all consistent with the theory that there was no intention to make Mahoney install a new system of sewerage as a part of his contract. If William H. Garde had authority to bind the corporation, the conclusion is inevitable that an obligation to pay Mahoney has arisen.

The defendant claimed that a large number of small items allowed by the court below as extras came within the provisions of the written contract. The finding upon this subject shows that, as the work of rebuilding progressed, it was ascertained that in some respects the plans were not adapted to the actual conditions existing, and changes were made. The proposed changes were submitted to William H. Garde, and were approved by him, and the work and materials necessary, not included in the original contract, were by him ordered to be furnished. By reason of the changes in the plans, William H. Garde orally ordered the plaintiff to make certain alterations in the work, which Mahoney had already fully completed. By reason of accidents, for which the plaintiffs were in no way responsible, it became necessary to do certain repair work, which William H. Garde orally employed Mahoney to do. Mahoney did all this work in a skillful and workmanlike manner; the labor and materials used are correctly stated in the bill of particulars, and the prices charged therein are fair and reasonable. In this connection also it is important to consider whether this work was ordered by one authorized to bind the defendant.

The court has found that these items were extras, and were ordered by William H. Garde. It appears that from the time the work was commenced until the building was opened as a hotel, Mr. Garde was the sole active manager of all the affairs of the defendant. He represented the company in all its dealings with the various contractors. No other officer or director of the defendant ever exercised any authority over the work on the building, except by way of making suggestions to Mr. Garde. The various directors, by reason of consultations with Garde, and of their observations, were well aware of his conduct in regard to the work as it progressed on the building, and of the apparent authority exercised by him, and they acquiesced therein. They were aware that he ordered orally certain work to be done which was not included in the original drawings and specifications, and did not dissent. Authority in the agent of a corporation may be inferred from the conduct of its affairs, or from the knowledge of its directors and their neglect to make objection. *Fitch* v. *Lewiston Steam Mill Co.,* 80 Me. 34, 12 Atl. 732; *Sherman* v. *Fitch,* 98 Mass. 59, 64. A corporation may be bound by an implied contract in the same manner as an individual. To render such party liable as a debtor under an implied promise, it must be shown not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for. *Union Hardware Co.* v. *Plume & Atwood Mfg. Co.,* 58 Conn. 219, 221, 20 Atl. 455; *Tryon* v. *White & Corbin Co.,* 62 Conn. 161, 25 Atl. 712; *Fitzgerald Construction Co.* v. *Fitzgerald,* 137 U. S. 98, 11 Sup. Ct. Rep. 36; *Pew* v. *Gloucester National Bank,* 130 Mass. 391, 395. Mahoney expended his money and furnished labor and materials for the benefit of the corporation. The corporation has accepted it, and it is under obligation to pay him as much as his labor and materials are fairly worth.

It is apparent that Mr. Garde had authority to make these orders for extra work. The directions by him, for the performance of this work not called for by the contract, are necessarily and of themselves a waiver of any requirement for written orders by the architects. *O'Keefe v. St. Francis Church*, 59 Conn. 551, 22 Atl. 325. The provision of the contract as to written orders is that "no alterations shall be made in the work done or described by the drawings and specifications, except upon a written order of the architects." The labor and materials furnished which are the subject of this action cannot be considered as "alterations" within the meaning of the contract. It was not therefore necessary for Mahoney to obtain the written order of the architects. *Beattie* v. *McMullen*, 80 Conn. 160, 67 Atl. 488.

The admission of Mahoney's books of account was not erroneous. These were his only books of account, compiled by his bookkeeper from slips made by the foreman on the job. *Butler* v. *Cornwall Iron Co.*, 22 Conn. 335, 359; *Cobb* v. *Wells*, 124 N. Y. 77, 26 N. E. 284; *Kent* v. *Garvin*, 1 Gray (Mass.) 148. The foreman was called as a witness, and testified that the items all represented the work and materials actually furnished on the building. After making the entries in the books, these slips were destroyed under the belief that they were not necessary. The fact that the entries in these books were made at intervals after such transactions was not fatal to the competency of the books. This objection went to the weight, and not to the admissibility, of the testimony. *Kent* v. *Garvin*, 1 Gray (Mass.) 148. If the foreman's slips were the original entries, their destruction, under the honest belief that they were no longer needed, would permit the introduction of secondary evidence of their contents. 2 Wigm. on Ev. § 1198; *Holmes* v. *Marden*, 12 Pick. (Mass.) 169, 171; *Tucker* v. *Bradley*, 33 Vt. 324, 328.

The plaintiff was asked these questions: "Q. Who was

present when you signed this contract, Mr. Mahoney? A. Mr. Bayley and Mr. Garde, senior. Q. Did you have any conversation with Mr. Bayley in Mr. Garde's presence about that purple ink clause in the addenda?" The last question was objected to by the defendant, for the reason that its purpose was to vary the terms of the written contract. The question was not admitted for the purpose of varying the contract, but as calling for one of the circumstances under which the contract was executed. The reply to this question related to payment for "rainwater leaders, drains," etc.

The clause in the specifications to which this question and the answer refer is so imperfectly stated that this court cannot now understand the object or effect of this testimony. Assuming that it refers to the general drainage system of the Batterson Building, the admissibility of this evidence is demonstrated by what we have already said upon this subject. If the evidence referred to certain rainwater conductors condemned by the plumbing inspector, the defendant has suffered no injury by the ruling complained of, as it appears that the court below refused to allow the plaintiffs' claim for this work.

Evidence by the plaintiff Mahoney that he furnished the extra work and materials in controversy under an agreement that he was to receive payment for them was properly admitted.

The defendant questions several rulings of the court below as to the admission of evidence, upon the ground that the testimony was not proper rebuttal. The admission of evidence on rebuttal instead of in chief, is within the discretion of the trial court. *Hoadley* v. *Savings Bank of Danbury*, 71 Conn. 599, 42 Atl. 667.

There is no error.

In this opinion the other judges concurred.