THE STATE OF CONNECTICUT *vs.* JOSEPH BUONOMO.

* First Judicial District, Hartford, March Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

Having correctly charged the jury what provocation must be shown to reduce a homicide from murder to manslaughter, the trial court called the attention of the jury to certain alleged actions of the decedent shortly before the homicide, as testified to by the accused, and directed them to consider carefully whether these acts would constitute such provocation. The trial court then alluded to certain other acts of alleged maltreatment of the accused by the decedent on days previous to the homicide, stating that "all these" would furnish no sufficient legal provocation. *Held* that in the words quoted, the trial judge obviously referred to the set of circumstances last detailed, and that the jury could not have understood otherwise, especially in view of other portions of the charge.

As a general rule the admission of evidence subsequently withdrawn

* Transferred from third judicial district.

by the trial judge with clear and explicit directions to the jury to exclude it from their consideration in deciding the case, cannot be urged as a ground of error.

A slight verbal inaccuracy on the part of the trial judge in referring to an incident in evidence, cannot be supposed to mislead the jury.

The order in which evidence shall be received is a matter resting in the sound discretion of the trial judge; and therefore the admission of evidence in rebuttal which should have been offered in chief, is not a ground of error.

The mutual relations of the accused and the decedent in a case of homicide, furnish a proper subject of inquiry as bearing upon the question of motive.

Argued March 4th—decided April 16th, 1914.

INDICTMENT for murder in the first degree, brought to the Superior Court in Fairfield County and tried to the jury before *Reed, J.;* verdict and judgment of guilty as charged, and appeal by the accused. *No error.*

*John J. Cullinan,* for the appellant (the accused).

*Stiles Judson,* State's Attorney, for the appellee (the State).

RORABACK, J. On the night of October 22d, 1912, the accused, as he admits, shot and killed Jennie Cavaliero, in the town of Stratford, in Fairfield county. Upon an indictment charging Buonomo with murder in the first degree for this offense, he was tried, convicted, and sentenced to death. Upon an appeal to this court, the judgment of conviction was reversed and a new trial ordered. *State* v. *Buonomo,* 87 Conn. 285, 87 Atl. 977. A second trial has taken place, and the accused has again been convicted and sentenced to death. The State claimed and offered evidence to prove the following facts: Prior to the homicide, the accused and the deceased woman, although not husband and wife, had been living together in Chicago. She was and had been a woman of loose character. After some disagree-

ment with the accused, she ran away from him in Chicago and came to Bridgeport. Buonomo soon followed, and found her in Bridgeport, when he reproached her for deserting him in Chicago. On the evening of the day after he arrived in Bridgeport, he planned an automobile ride with her. An automobile, with a chauffeur, was secured, and, after the accused had picked up four men of his own nationality, the party started for a ride over a country road in the town of Stratford. During the ride from Bridgeport, the members of the party were apparently pleasant and in a friendly mood. When they had reached a lonely place on the highway, the chauffeur was directed to stop, and all of the occupants, except the chauffeur, left the car. He was directed to go up the road and turn around. While he was turning the car a short distance away, Buonomo fired five shots from his revolver into the face, head and body of the woman, causing almost immediate death. Several of these shots were fired when the deceased lay prostrate upon the ground. As soon as the chauffeur saw the body of the woman upon the ground, he gave information of the murder. Buonomo, after discharging the shots into the woman's body, ejected the five empty shells from his revolver on the ground near her body and reloaded his revolver, which was found on his person fully loaded when he was arrested later in the night at some distance from the spot where the killing occurred.

The defendant took the witness-stand in his own defense, and in the course of his testimony admitted that he remembered almost everything up to the moment when the shots were fired by him, but declared that he did not remember any more. Evidence was also introduced by the defense which it was claimed tended to prove that Buonomo killed the woman under a sudden impulse of passion, aroused because she called

him a vile name, struck him across the eyes, and pushed him over on the ground, and that he was so much under the influence of liquor at this time that he did not have any realizing sense of what was taking place. The accused also introduced evidence tending to prove that he was of unsound mind at and before the time the homicide was committed.

These claims of the defense were denied by the State, which offered evidence to prove that Buonomo was of sound mind; that he was sober in Bridgeport on the night of the murder; that he fully realized what he was doing when the woman was shot and killed, as shown by the accuracy of his marksmanship in firing the shots at the woman, his ejecting the empty shells from the pistol and reloading it, and his subsequent flight. The State also offered in evidence certain statements made by the defendant after his arrest, which, it was claimed, established a motive for the killing.

The errors assigned relate to the charge as given, refusals to charge as requested, and rulings made as to the admission of evidence. The accused complains of the charge because the jury were told that: "If the only provocation that this accused had for shooting Jennie Cavaliero five times and to her death was, as he says, that she called him a dirty name and pushed him over and poked her fingers into his eyes, then I say to you, that you should consider carefully whether such a provocation would be sufficient to reduce the crime from murder to manslaughter. And if the claims of the accused are true, that on previous days the woman had deprived him of his money or his clothes, or had otherwise treated him slightingly, all these would furnish no provocation sufficient to reduce the crime to manslaughter." Apparently this portion of the charge contains two separate propositions, the first one being that, under certain circumstances, the jury should carefully

consider whether the provocation was sufficient to re-
duce the crime from murder to manslaughter. The
jury were then informed that, assuming certain claims
of fact made by the accused to be true, they would not
be sufficient to reduce the crime to manslaughter.

We do not understand that counsel for the defendant
insists that the charge, when so interpreted, is errone-
ous. The contention is that the expression "all these
would furnish no provocation sufficient to reduce the
crime to manslaughter" might have been misunder-
stood by the jury as applying to all the acts of provoca-
tion commented upon by the court in this portion of
its charge. On the contrary, this applied only to the
facts stated in the last statement of the charge, just
quoted, and it is plain that the jury must have so under-
stood it, in view of other portions of the charge.

An examination of the record shows that at least one
page of the instructions immediately preceding the re-
marks complained of is devoted to a discussion of the
subject of manslaughter, and the provocation that must
be shown to reduce a voluntary killing from the crime
of murder to manslaughter. It here appears that the
trial court, after defining manslaughter, voluntary and
involuntary, fully and correctly instructed the jury as
to the sufficiency of a provocation, and the necessity of
considering all of these circumstances in determining
whether or not the accused at the time of the homicide
was in such a frame of mind as to have killed the woman
in a wilful, deliberate and premeditated manner.

Taking the instructions together, it is clear that the
jury could not have been misled, and that the instruc-
tions are not open to the criticism that they were cal-
culated to leave the impression with the jury that it
was told that, upon the question of provocation, it
should find against the accused, or that the crime of
manslaughter was eliminated from the case.

The State was allowed, against the objection of the defendant, to introduce the testimony of one Jacob Goldstine to the effect that he had heard shots fired in a restaurant across the street from his place of business in Chicago; that, on looking across, he saw three men wrestling; then he heard another shot; and that the accused was one of the party. This evidence was offered upon the theory of the State that Jennie Cavaliero was killed by Buonomo to prevent her from disclosing a crime committed by him. After the witness had stated that he could not say who had done the shooting, the court directed the jury to dismiss the testimony from their minds and pay no attention to it. Substantially the same directions were given at the close of the trial when the court instructed the jury. The withdrawal of this testimony from the jury by the trial judge left the defendant without a legal ground of objection to the admission of it. As a general rule, an error of the trial judge in admitting testimony may be subsequently cured by clear and explicit instructions to the jury to exclude it from their consideration in deciding the case. *Gorman* v. *Fitts*, 80 Conn. 531, 534, 69 Atl. 357; *Latham* v. *Aldrich*, 166 Mass. 156, 159, 44 N. E. 137; *Gall* v. *Gall*, 114 N. Y. 109, 121, 122, 21 N. E. 106; *Pennsylvania Co.* v. *Roy*, 102 U. S. 451, 459, 26 L. Ed. 141. The jury were expressly told to disregard this evidence, and there is nothing to indicate that they did not follow this instruction.

In this connection exception is taken to the instructions of the court that: "As I remarked to you at the time of striking out the testimony of Jacob Goldstine, the Chicago witness, relating to the killing of the other two men there, you are not to consider the testimony of that witness in that respect at all, but entirely discharge it from your memory." The description of the offense by the trial judge in this instruction was such

that any one familiar with the course of the trial must have understood that it referred to the same testimony of Goldstine which we have seen was rejected by the court after the witness had stated that he could not say who had done the shooting. It is impossible to believe that the jury could have been misled by the inadvertent erroneous description of the testimony which the court plainly intended to refer to, and led to believe that Goldstine had stated that Buonomo had killed two men in Chicago.

Three objections are made by the defendant to the rulings admitting testimony, upon the ground that the evidence was not proper rebuttal. The right of the presiding judge to receive, in rebuttal, evidence which should have been offered as part of the evidence in chief, cannot be doubted. *Mahoney* v. *Hartford Investment Corporation,* 82 Conn. 280, 73 Atl. 766; *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, 608, 42 Atl. 667; *State* v. *Boylan,* 79 Conn. 463, 469, 65 Atl. 595. It is obvious that, if the trial judge should admit evidence out of the regular course, the opposing party would have the right to meet it. Assuming, as the defendant claims, that these rulings are reviewable by this court, it does not appear that the accused was prejudiced by the admission of this evidence.

One assignment of error relates to the admission of the testimony of one Jacob Goldstine, of Chicago, a witness for the State, who was permitted, against objection, to testify that Jennie Cavaliero, prior to her coming to Bridgeport, lived in a sporting house in Chicago, and frequented the red light district. The objection was a general one. If, therefore, the evidence was admissible for any purpose, there was no error in receiving it. *Starkey's Appeal,* 61 Conn. 199, 202, 23 Atl. 1081. If admissible for one purpose, although inadmissible for others, it is to be presumed to have been

received only for the legitimate purpose, in the absence of a finding to the contrary. *General Hospital Society* v. *New Haven Rendering Co.*, 79 Conn. 581, 584, 65 Atl. 1065; *New England Mfg. Co.* v. *Starin*, 60 Conn. 369, 373, 22 Atl. 953; *Hurlbut* v. *McKone*, 55 Conn. 31, 46, 10 Atl. 164. It was certainly relevant upon one of the important issues of the case. The accused admitted the shooting. The attempt made on his behalf was to reduce the degree of his crime by showing that he was under the influence of drink at the time, and that the act was committed under the immediate impulse of a sudden passion aroused by his victim. Under these circumstances, it was important for the prosecution to show a motive on the part of the accused prompting to a wilful killing of the girl. In this connection the relations of the two, present and past, furnish a proper subject for investigation. *Commonwealth* v. *Costley*, 118 Mass. 1, 27. Motive is a fact which may be inferred from circumstances; hence the circumstances from which it may be inferred are relevant. In the case of a homicide, the relations of the parties, including all of the circumstances which have gathered about their lives, furnish a most natural and suggestive field of inquiry in the search for possible motives prompting the deed. That the victim of Buonomo's act was a woman of loose character and his partner in illicit relations, who, by reason of some disagreement between them, had left him to come to Bridgeport, whither he had followed her, were facts which it was competent to bring to the attention of the jury as bearing upon the question of a motive for his alleged crime.

There is no error.

In this opinion the other judges concurred.