THE GELLATLY CONSTRUCTION COMPANY *v.* CITY OF BRIDGEPORT

KING, MURPHY, SHEA, ALCORN and LEIPNER, JS.

Argued May 1—decided June 26, 1962

*Frederick L. Comley,* with whom, on the brief, was *Robert J. Cooney,* for the appellant (plaintiff).

*John J. McGuinness,* with whom, on the brief, were *Hugh C. Curran* and *Jack Samowitz,* for the appellee (defendant).

MURPHY, J. The plaintiff, as the successful bidder, was awarded the general contract for the construction and site improvement of the Bridgeport Longfellow elementary school by the city, acting through the board of education. The plaintiff completed its obligations under the contract, the work has been accepted by the city, and the plaintiff has received payment in accordance with the terms of the contract. The plaintiff claims, however, that it is entitled to an additional payment of $28,527.65 to reimburse it for extra expense incurred in removing excess fill from the site. In the present action to recover for this expenditure, the court concluded that the removal of the excess fill was called for by the contract specifications and that the plaintiff was not entitled to additional compensation. The plaintiff has appealed from the judgment rendered for the defendant.

The complaint contains four counts. In the first count, the plaintiff claims the expense of removing the excess fill as an extra under the contract; in the second, it alleges that it removed the fill on the instructions of the architect, although it was only required to grade the fill on the site; in the third, it seeks to recover in quantum meruit; and in the fourth, it alleges that the city denied it the use of a nearby public dump, thereby causing it to incur the extra expense. The defense, in effect, is that the removal of the excess fill is part of the work required under the general contract and that no extra compensation is due. The city also pleaded governmental immunity as a special defense to the fourth count. The facts found by the court have not been challenged by the plaintiff. The conclusions reached by the court are the subject of the plaintiff's attack.

These are the facts essential to the determination of this appeal: The plaintiff is a general building contractor in Bridgeport. Prior to March 14, 1958, when the bids were opened, it submitted a bid, accompanied by a bid bond of $129,840, for the construction and site improvement of Longfellow School. The bid bond represented 10 percent of the bid price and was conditioned on the plaintiff's executing the contract if awarded it. The plaintiff and the defendant signed a written construction contract on April 1, 1958. The plans and specifications had been prepared for the defendant by Toby Vece, an architect. They were made an integral part of the contract. Section 1.09 (B) of the specifications provided that "[i]n the event there is an excess of fill the Contractor shall grade same on the site where directed by the Architect. The cost of disposing of any excess fill on the site shall be included in the Contractor's price and bid." The school site was a former dump. Within 300 yards of the site, the city, in 1958, maintained the only public dump in the city. The entrance to it was two blocks away. The dump was under the supervision of the department of public works. Dumping elsewhere in the city was prohibited. On April 1, 1958, prior to the signing of the contract on that day, the plaintiff was informed for the first time that it could not use the city dump for the deposit of excess fill, as it had expected to do. Faced with the forfeiture of its bid bond if it did not sign the contract, the plaintiff executed it, hopeful that the facilities of the city dump would be made available. The hope did not materialize, although the plaintiff continued to seek permission to use the dump. Through arrangements made by the president of the board of education, acting as a private citizen, 7000 cubic

yards of excess fill were disposed of by the plaintiff by depositing it on private property adjacent to the site. No claim is made for the cost of this operation. As additional excess fill accumulated, the plaintiff sought instructions from the architect on its disposition. The plaintiff was willing to grade it on the site, but Vece refused authorization to do so because it would create an embankment. Vece had previously stated that he thought that the city should provide a dump for the material. Nevertheless, twice thereafter, he directed the plaintiff in writing to remove all excess fill from the site at its own expense, and his instructions were ratified by the board of education. The plaintiff, after notifying the defendant that it would seek extra compensation for the cost of removing the fill, caused 23,000 cubic yards of it to be removed to sites in Fairfield at a cost of $28,527.65, the sum it seeks to recover.

It is undisputed that at the time the plaintiff submitted its bid it knew from the site plan that it would be necessary for the contractor to remove approximately 33,000 cubic yards of excess fill. The site plan, which was made a part of the contract, and the specifications governing rough and fine grading, which required the contractor thoroughly to inspect the site to determine the existing conditions and base his proposal on them, not only alerted all bidders concerning the amount of fill which would be left over after excavations were made and grading was completed but alerted them to the fact that they must ascertain for themselves just what could be expected. The plaintiff does not claim that it was misled as to either the kind of excess fill which would be unearthed in digging into an old dump site or the quantity which would remain after grading

was completed. See *E. & F. Construction Co.* v. *Stamford,* 114 Conn. 250, 260, 158 A. 551; *Construction Aggregates Corporation* v. *State,* 148 Conn. 315, 326, 170 A.2d 274.

The argument of the plaintiff stems from the failure to include in § 1.09 of the specifications a specific direction that the contractor would have to remove from the site the fill not needed for grading and dispose of it elsewhere. At first blush, there seems to be some merit to this contention. This isolated section of the specifications, however, should not by itself govern the interpretation of the contract. To consider this one section as controlling would do violence to the oft-repeated rule that, in the construction of a written instrument, the entire document, and not just excerpts culled from it, must be considered in the light of the situation of the parties and the circumstances connected with the transaction. *Foley* v. *Foley,* 149 Conn. 469, 471, 181 A.2d 607; *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828; *Mahoney* v. *Hartford Investment Corporation,* 82 Conn. 280, 284, 73 A. 766. Section 1.09 of the specifications deals with "excess or shortage of fill and top soil." If additional fill or topsoil was required to complete the grading, the contractor was to provide it and include the cost in his bid. Similarly, if there was a surplus of fill after the site was graded, it was the duty of the contractor to arrange for its disposition and to include the cost of doing so in his bid. Another section in the specifications and the contract itself provided that when the job was completed, it would be necessary for the contractor to remove all surplus material, of every description, resulting from his operations and leave the site clean. That the plaintiff fully understood that it

had to dispose of excess fill other than by grading it on the site is borne out by the fact that its bid included the price to be charged by its subcontractors for removing the excess fill and depositing it on the neighboring city dump. The conduct of the plaintiff in this respect is indicative of its understanding and interpretation of the language concerning the disposition of excess fill. See *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.*, 146 Conn. 338, 343, 150 A.2d 597. In view of the provisions in the contract and specifications, together with the plans and the conduct of the parties, the court was correct in holding that the plaintiff was obligated under its contract to remove the excess fill and that it was not entitled to extra compensation for so doing.

A Bridgeport ordinance, as amended in 1954, regulated the disposal of waste matter and the supervision and control of city dumping grounds. The plaintiff does not question the right of the city under its general police powers to enact such legislation. Under § 4 of the 1954 ordinance, the dumping of waste and other refuse matter except at a city dump was prohibited. By § 2, all extraordinary waste, as the court found the excess fill to be, was to be disposed of, if noncombustible, at a city dump. As pointed out in § 1, a purpose of the ordinance was to restrict the use of the city dump to resident persons and firms. The control and supervision of the city dump was vested in the director of public works. He was charged by § 3 with the duty of collecting and removing all ordinary waste properly prepared and set out for collection. Combustible waste was to be burned at the city incinerator, while all other ordinary waste was to be deposited on the city dump. At the time the plaintiff signed the con-

tract to build the school, the city dump was filled to 96 percent of its capacity and was piled to a height of ten to fifteen feet above street level. The remaining 4 percent of the dump could accommodate about 10,000 cubic yards of fill. Therefore, if the plaintiff had been permitted to utilize the dump, it could have disposed of but one-third of the excess fill in that location and would have been obliged to go elsewhere with the other two-thirds. Under § 3 of the ordinance, the director of public works had the discretion of collecting extraordinary waste when it was presented to him in reasonable and nonexcessive amounts. He did not abuse his discretion when he denied the plaintiff the privilege of using the city dump to the exclusion of the other inhabitants of the city. Foresight on the part of the plaintiff would have enabled it to ascertain the availability of the city dump for its purposes before it submitted its bid prior to March 14, 1958. If the plaintiff failed to investigate before submitting its bid, it must bear whatever burden arises from its neglect.

The final claim of the plaintiff is that the refusal of the city to allow the plaintiff to use the dump constituted a wrongful hindrance of performance which rendered the city liable for the difference between the cost of disposing of the fill on the city dump and the cost of removing it to Fairfield, as the plaintiff did. In its bid, the plaintiff included the cost of removing the excess fill from the site and transporting it to the dump. The short answer to the plaintiff's claim is that the city's refusal to allow the plaintiff to use the city dump was not wrongful. Furthermore, the finding does not include any determination of the additional cost entailed in hauling the fill to Fairfield and disposing of it there.

Since the plaintiff has not sought additions to the finding in this regard, there is nothing to show that the plaintiff established a factual basis for recovery under the claim of hindrance of performance.

There is no error.

In this opinion the other judges concurred.