LOUIS BLATT ET AL. *v.* THE STAR PAPER COMPANY

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 7—decided December 29, 1970

*Louis Evans,* with whom was *Mark G. Sklarz,* for the appellants (plaintiffs).

*Ivan A. Hirsch,* with whom, on the brief, was *Edgar W. Krentzman,* for the appellee (defendant).

COTTER, J.  The plaintiffs, Louis Blatt, hereinafter referred to as the plaintiff, and his wife, Toby Blatt, brought this action asking for money damages and for a decree compelling the defendant to perform a written contract between the parties to make payments to the plaintiff or his wife.  The court rendered judgment for the defendant and the plaintiffs have appealed.  They have assigned error on the grounds that the special finding of facts made by the court is insufficient to support the judgment; that the court failed to find certain facts as set forth in the draft finding; and that certain portions of the court's finding are of doubtful meaning and inconsistent with the provisions of the contract as set forth in certain paragraphs of the court's finding. The plaintiffs also assign error in the conclusions of the court, in certain rulings of the court on evidence, and the overruling of the plaintiffs' claims of law.

The court decided the case without causing the facts on which it founded its judgment to appear on the record and the plaintiffs requested a finding

that the court specially set forth such facts. Practice Book § 260; see General Statutes § 52-231. The plaintiffs assign as error the court's special finding of facts on the ground that the special finding is insufficient to support the judgment. "The purpose of a special finding is to place upon the record the material facts upon which the judgment is based; other matters have no place in it and can only be presented in a finding made for the purpose of an appeal." Practice Book § 265; see *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 622, 7 A.2d 847. "When a material fact is found from more detailed or subordinate facts, not as a conclusion of law but as a conclusion of fact, only the main or resulting fact should be set forth in the [special] finding." Practice Book § 266. Paragraph 5 of the special finding is as follows: "The defendant corporation continued to pay, and has paid to date, the sum of $100 per week as per agreement dated December 28, 1962." That conclusion of a main fact is sufficient to support the judgment in favor of the defendant.[1]

---

[1] The entire special finding is as follows:

"SPECIAL FINDING

"1. On December 28, 1962, the plaintiff contracted with the defendant corporation and also with Benjamin and Stanley Scholsohn to sell to said Scholsohns his stock in said corporation.

"2. The defendant corporation in said agreement, agreed to pay the plaintiff the sum of $100 per week for the balance of his life and upon his death, to the plaintiff's wife for her life.

"3. After said agreement was executed, the plaintiff was employed by the defendant corporation until October, 1968, when his employment was terminated.

"4. For said employment the plaintiff received sums of money up to $100 per week in addition to the sum of $100 agreed to.

"5. The defendant corporation continued to pay, and has paid to date, the sum of $100 per week as per agreement dated December 28, 1962.

TEDESCO, J."

The material facts found by the court relating to this appeal, which are not subject to correction, may be summarized as follows: The plaintiff, Louis Blatt, is a brother-in-law of Benjamin and Stanley Scholsohn, stockholders of the defendant, the Star Paper Company. Between 1945 and December 28, 1962, the plaintiff was employed by the defendant and he also held a one-twelfth interest in the capital stock of the defendant. The plaintiff, however, was unable to work from May, 1962, to October, 1962, due to a heart attack. On December 28, 1962, he entered into a written agreement with the Star Paper Company and Benjamin and Stanley Scholsohn. The express purpose of the agreement was to provide for the sale of the plaintiff's stock in the defendant corporation to Benjamin and Stanley Scholsohn and to provide for an amicable settlement of certain claims that he claimed he had against the corporation; and to recognize "the many long years of faithful service of Blatt" to the corporation. The terms of the agreement provided that the Scholsohns would pay the plaintiff the sum of $12,750 for his shares of stock. In addition, the defendant corporation agreed to pay Louis Blatt $100 per week for the remainder of his life and upon his death, to continue the payments to the plaintiff's wife.[2]

---

[2] The pertinent provisions of the contract are as follows:

"Whereas, Blatt has agreed to relinquish all right and remedies which he claims to have against Corporation as a minority stockholder and otherwise:

"Now, therefore, in consideration of the above, and in consideration of the mutual covenants and conditions contained herein, and recognizing the many long years of faithful service of Blatt, said Corporation and said Blatt do hereby agree as follows:

"1. Said Blatt does hereby agree to sell to Benjamin Scholsohn and Stanley Scholsohn, and said Benjamin Scholsohn and Stanley Scholsohn do hereby agree to buy from Blatt, all of Blatt's shares of

After the execution of the contract Blatt continued in the employ of the defendant at an agreed salary of $75 per week, which was increased shortly thereafter to $100 per week. Between 1963 and October, 1968, he received a check from the defendant corporation of $160 per week less F.I.C.A. and withholding taxes, plus a car allowance of $40 per week, except from October, 1967, to April, 1968, when he was ill and unable to work, he received a portion of the weekly payment as a payment from a major medical policy, and during a period in March, 1963, when he took an unauthorized three-week vacation during which time he received $100 per week. Blatt was discharged from the defendant corporation in October, 1968, and since October 18, 1968, he has received $100 per week less F.I.C.A. and withholding taxes. Following his discharge the plaintiff claimed and demanded the $100 per week as provided for in ¶ 2 of the contract, for the first time, six years after the contract was executed, even though the plaintiff was

---

stock in Corporation, being twenty-eight (28) shares. Benjamin Scholsohn and Stanley Scholsohn agree to pay to Blatt for said shares of stock and Blatt agrees to accept from them for said shares of stock, the principal sum of Twelve Thousand Seven Hundred Fifty ($12,750.00) Dollars, plus interest at the rate of six per centum (6%) per annum on the unpaid balance of said sum;

"2. In addition thereto, Corporation does hereby agree to pay to Blatt the sum of One Hundred Dollars ($100.00) per week, commencing one (1) week from the date hereof and continuing each and every week for the balance of Blatt's life; and upon Blatt's death, said Corporation does hereby agree to continue making said weekly payments of One Hundred Dollars ($100.00) each to Blatt's wife, Toby Blatt, if she survives Blatt, commencing with the first of said payments one (1) week after Blatt's death, and continuing with said weekly payments of One Hundred Dollars ($100.00) each for the remainder of Toby Blatt's life. This provision in favor of Toby Blatt shall be enforceable by her to the same extent as if she were a party to this agreement."

in need of more money after January, 1963, and requested and received an increase in salary.

The plaintiffs also assign error in the conclusions of the court that: (a) the defendant did not breach its agreement of December 28, 1962, and that (b) the weekly payments made by the defendant to Louis Blatt after December 28, 1962, and while performing full-time services was allocated at $100 in accordance with ¶ 2 of the agreement and the remainder thereof to salary. The conclusion that Louis Blatt was paid after December 28, 1962, as a full-time employee is not supported by the findings of fact which show on the contrary that he was a part-time employee. This portion of the conclusion is corrected to show that Blatt was performing part-time services during that period. This correction, however, does not affect the result which we reach in this case. The court's conclusions are to be tested by the finding and must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Schurgast* v. *Schumann,* 156 Conn. 471, 478, 242 A.2d 695; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500.

The finding contains four subordinate facts which support the court's conclusions. First, the defendant was obligated under ¶ 2 of the agreement to pay the plaintiff $100 per week. Second, after December 28, 1962, the plaintiff continued in the employ of the defendant for an agreed salary of $75 per week for his part-time work which was increased to $100 per week. Third, while the plaintiff continued in the employ of the defendant after December 28, 1962, he was paid $100 per week in excess of the agreed wages; except during a three-week unauthorized vacation, when he was paid, without protest, $100

per week by the defendant. Finally, the plaintiff never advised the defendant that he was not receiving the $100 as per contract and the plaintiff never made a demand for $100 per week as a separate check during the six years subsequent to the execution of the contract.

The plaintiffs' principal argument which is not persuasive is that the defendant treated its contractual obligation as a payroll item because F.I.C.A. and withholding taxes were deducted, and not as part of the purchase price for the plaintiff's stock. The plaintiff places great emphasis on the characterization of the contract. He contends that the contract is for the sale of stock and that the court erred in characterizing the contract as an employment contract. The defendant, however, concedes that the contract is not an employment contract and argues that the court also made the same determination. The proper labeling of the contract is irrelevant and should not be the basis of the opinions. The question to be decided in this case is simply whether the defendant performed its contractual obligations. If the defendant made the required payments, the fact that for tax purposes the payment was treated as salary to allow a deduction under § 162 of the Internal Revenue Code (26 U.S.C. § 162), whether or not properly deducted, should not be a factor considered in this opinion.

The facts found support the court's conclusions in the following manner: The parties to the contract discussed the desirability of handling the payments as a payroll item subject to the normal deductions; while he was employed, the plaintiff accepted the weekly checks without protest for a period of six years and never requested that the $100 payments be made as separate checks; and the plaintiff testi-

fied that he did not complain about the failure to pay him $100 until he was discharged because he did not need the money. Sometime after January, 1963, however, the plaintiff complained that he did not have enough money, and the defendant gave him an increase of $25 per week. Finally, an examination of the contract supports the finding that the basis for the deductions from the plaintiff's check with respect to the $100 paid on the contract was remuneration for past services. In construing a written instrument, the entire document must be considered in the light of the situation of the parties and the circumstances connected with the transaction. *Gellatly Construction Co.* v. *Bridgeport,* 149 Conn. 588, 593, 182 A.2d 625. The contract expressly states that part of the consideration is the recognition of the past services of the plaintiff.

The conclusions of the court are based on unchallenged subordinate facts determined from conflicting evidence and are logically consistent with the facts found and, therefore, must not be disturbed. *Schurgast* v. *Schumann,* 156 Conn. 471, 478, 242 A.2d 695; *Nair* v. *Thaw,* 156 Conn. 445, 449, 242 A.2d 757; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 222, 215 A.2d 123.

The plaintiffs next assign error in the failure of the court to find additional facts which they set forth in their draft finding. Paragraphs 8 through 13 of the plaintiffs' draft finding relate to Louis Blatt's gross earnings from the defendant from 1963 to 1968, which he claims are established by his income tax returns for those years. These requested findings, which are neither admitted nor undisputed, would have required the court to conclude that the payments made to the plaintiff during these years

represented compensation for current services rendered. This is one of the basic issues of the case. To secure an addition to the finding it is necessary for the plaintiff to point to some part of the pleadings, appendix, or an exhibit properly before this court, which reveals that the defendant admitted that the fact in question was true or that its truth was conceded to be undisputed. *Cohen* v. *Holloways', Inc.*, 158 Conn. 395, 397, 260 A.2d 573; *Martin* v. *Kavanewsky*, 157 Conn. 514, 515, 255 A.2d 619. The requested findings are neither admitted nor undisputed.

Other facts in the plaintiffs' draft finding which the plaintiffs seek to add to the finding relate to the car allowance of $40 per week, the identity of the accountant who prepared Louis Blatt's income tax returns, and the amount of the check the plaintiff received for the week ending October 3, 1968. These facts are sufficiently covered in the court's finding. The finding need not be in language identical with the draft finding. *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 55, 221 A.2d 589.

Other paragraphs of the plaintiffs' draft finding allege that the plaintiff was a full-time employee of the defendant subsequent to December 28, 1962. There was conflicting evidence on this point, as discussed above, and this claim was neither admitted nor undisputed; therefore, it would be improper to add to the finding. *Cohen* v. *Holloways', Inc.*, supra; *Martin* v. *Kavanewsky*, supra; *National Broadcasting Co.* v. *Rose*, supra.

The plaintiffs also request a correction that the court find that Louis Blatt took a vacation in April, 1963. The court found as supported in the evidence that the vacation was taken in March, 1963.

The plaintiffs next assign error to certain portions of the court's finding on the grounds that they

are of doubtful meaning and inconsistent with the express findings set forth in other paragraphs of the finding. Those contain the disputed provisions of the contract in question, ¶¶ 1 and 2 of the contract printed in footnote 2.

The court's finding states in part that the plaintiff understood that he was to receive $100 per week from the defendant, whether he worked or not, for the balance of his life. The plaintiff testified that that was the agreement made between the parties and this finding is supported by that testimony and other evidence. The plaintiffs argue that, although that paragraph is not assigned as error, what Louis Blatt understood should have been excluded on the ground that the intention of the parties to a contract must be determined from the language of the instrument itself and not from any intention either of the parties may have entertained. Error cannot be predicated on this claim. *Foley* v. *Foley,* 149 Conn. 469, 471, 181 A.2d 607. It is significant in this regard that the plaintiff did not make a demand for the $100 weekly payments for a period of six years and it is apparent that such conduct is clearly inconsistent with his claim that the defendant failed to perform its contractual obligations. We construe a contract in accordance with what we conclude to be the understanding and intention of the parties as determined from the language used by them "interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Bria* v. *St. Joseph's Hospital,* 153 Conn. 626, 630, 631, 220 A.2d 29; 17A C.J.S., Contracts, § 296 (1). "The intention of the parties manifested by their words and acts is essential to determine" the meaning and terms of the contract and that intention may be gathered from all such permissible, pertinent facts and cir-

cumstances. *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 347, 225 A.2d 797; 17A C.J.S., Contracts, § 295 (a).

The court's finding of fact that Louis Blatt received one check of $200 per week which included the $100 per week according to the contract is incorporated in the court's conclusion that the payments received by the plaintiff included the $100 per week due under ¶ 2 of the contract. The court's conclusion was discussed earlier. Since the finding is supported by the evidence it should not be disturbed. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190; *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196; *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123.

The remaining assignments of error relate to claims that the court erred in certain rulings on evidence and in failing to uphold the plaintiffs' claims of law. The claimed errors concerning the admission of certain testimony involved the parol evidence rule. Since the finding does not disclose what answers, if any, were made by the witnesses to the questions asked, no error can be predicated on these rulings. Practice Book § 648; *Hanauer* v. *Coscia,* 157 Conn. 49, 56, 244 A.2d 611. The answer given to the question asked of Paul Scholsohn on cross-examination by the defendant's counsel, based on the meager finding in that regard, does not purport to vary the terms of the contract. The court was not in error in admitting the testimony as recited in the finding.

We find no justification for disturbing the conclusions of the court. Any confusion or ambiguity, under the circumstances, can be attributed to the intention of the parties in regard to the purpose of the weekly payments which were made to the plain-

tiff rather than the meaning or interpretation of ¶ 2 of the agreement entered into by the parties. The Scholsohns agreed to purchase and pay for Louis Blatt's stock under ¶ 1 of the agreement and the defendant corporation agreed to pay him $100 a week for his life and upon his death to his wife for her life, if she survived him, under ¶ 2 of the agreement. These were two separate and distinct undertakings. The Scholsohns wanted sole control and ownership of the corporation and the corporation, inter alia, was willing to recognize "the many long years of faithful service of Blatt."

There is no error.

In this opinion the other judges concurred.